STATE of Missouri, Plaintiff-Appellant,

v.

Alfred Roger McMULLAN,
Defendant-Respondent.

No. 51546.

Missouri Court of Appeals,
Eastern District,
Division One.

July 29, 1986.

David R. Orzel, Asst. Prosecuting Atty., Farmington, for plaintiff-appellant.

Donald J. Hager, Public Defender, Farmington, for defendant-respondent.

CARL R. GAERTNER, Presiding Judge.

Charged with first degree murder, defendant moved before trial to suppress evidence he claimed the police had obtained in violation of his Fifth and Sixth Amendment rights to counsel. The trial court, after a hearing, granted the motion and ordered the evidence suppressed. The state brings an interlocutory appeal from the suppression order. § 547.200, RSMo.Cum.Supp. 1984. We affirm.

In July, 1985, while in jail awaiting trial on a charge of receiving stolen property, defendant Alfred McMullan became the focus of a police investigation into the murder of the owner of the stolen property. Sheriff Vernon Nelson conducted the investigation, interrogating defendant on five different occasions. On each occasion Nelson advised defendant of his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and on each occasion defendant made a statement. The record does not disclose the nature or content of defendant's statements. It does establish, however, that when (on the fifth occasion) defendant told Nelson, "I'll tell you the truth, but I want my lawyer present," interrogation ceased and counsel appointed to represent defendant on the stolen property charge was called in. Counsel conferred with defendant then told Nelson there would be no statement and no deals.

Thereafter, Nelson made no direct attempt to elicit incriminating information from defendant. Nelson recognized an alternative, however, when one evening defendant, "upset," "crying," and "afraid of being beaten up by someone (a cellmate) that was calling him a squealer," asked to be protected. Nelson transferred defendant to a hold-over cell occupied by Danny Pickett, a persistent offender who was facing a possible 70 years in prison on four felony counts. Nelson called Pickett to his office and asked Pickett to, in Nelson's own words, "comfort Mr. McMullan, (who) was rather upset." Nelson also told Pickett he suspected McMullan of murder and asked Pickett to see if he could get McMullan to talk either to Nelson or Pickett about the offense. When Pickett predictably asked, "What's in it for me?", Nelson replied he would talk to the prosecutor about Pickett's case. Pickett said he would see what he could do.

The next day Pickett and McMullan in Pickett's words, "got to talking":

> Well, we just got to talking and I asked him about the case and explained to him that I could ... try to get someone to help him. And he listened to me and then ... I told him I knew a lawyer in St. Louis that I might be able to try to get him ... And after we talked awhile about it he pretty well just started telling me everything that happened.

Pickett asked defendant to put his story in writing so that Pickett might accurately relay it to the lawyer. Defendant complied. Pickett turned the written statement over to Nelson who turned it over to the prosecuting attorney. The prosecuting attorney assured Pickett that in exchange for Pickett's cooperation the four felony counts pending against him would be dropped. The statement led police to discover other evidence implicating defendant. Defendant was subsequently charged with murder.

Defendant moved before trial to suppress the evidence the police had obtained through Pickett, arguing that Pickett, as an agent of the state, had elicited defendant's statement in violation of his Fifth and Sixth Amendment rights to counsel. The trial court was persuaded, and ordered the statements and its fruits suppressed.

The state appeals from the suppression order raising three points, which we paraphrase: 1) the trial court erred in suppressing defendant's statement on Sixth Amendment grounds because no information charging defendant with the murder had been filed when the statement was elicited, and therefore defendant's Sixth Amendment right to counsel had not yet attached; 2) suppression on Fifth Amendment grounds was error because the statement was elicited by a fellow inmate, and not an agent of the state; 3) even if the statement and its

fruits are inadmissible against defendant in the prosecution's case-in-chief it would be error to bar their use against defendant as impeachment.

Because the subsequent murder charge was but an additional charge related to the original receiving stolen property charge, the state's assertion that defendant's statement was elicited before his Sixth Amendment right to counsel had attached is, in light of *Maine v. Moulton*, —— U.S. ——, 106 S.Ct. 477, 88 L.Ed.2d 481 (1985), of doubtful merit. We need not reach the issue, however, because we hold that use of defendant's statement and its fruits as substantive evidence against him is barred by the exclusionary rule of *Miranda, supra.* We do not pass on the impeachment issue the state raises in its third point, as we find it is not properly before us.[1]

■ When a suspect invokes his Fifth Amendment right to have counsel present during a custodial interrogation, as defendant did in this case with the words, "I'll tell you the truth, but I want my lawyer present," interrogation must cease until the suspect's attorney is present. *Miranda v. Arizona, supra*, 384 U.S. at 474, 86 S.Ct. at 1628, 16 L.Ed.2d at 723. Moreover, once a suspect expresses his desire to deal with the police only through counsel, as defendant did here when he advised Sheriff Nelson through counsel that there would be no statement and no deals, he may not be subjected to further interrogation unless he himself initiates further communication, exchanges, or conversations with the police. *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). "Interrogation" under *Miranda* and *Edwards* embraces not only express questioning by police, but also "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1979).

■ The record in this case supports the conclusion that Sheriff Nelson knew, or should have known, that placing Pickett in the hold-over cell with defendant with instructions to get defendant to talk about the murder was, given defendant's anxious state and Pickett's incentive to cooperate, an act "reasonably likely to elicit an incriminating response" from defendant. Pickett's conversation with defendant was therefore the "functional equivalent" of direct police interrogation.[2] *Rhode Island v. Innis, supra.* Pickett interrogated defendant concerning the murder after defendant had plainly expressed his desire to deal with police only through counsel, and the state does not dispute the interrogation was initiated by Pickett. Accordingly, we find interrogation of defendant in this case violated the "bright-line" rule of *Edwards, supra,* that once a suspect has invoked his Fifth Amendment right to counsel he may not be subjected to further interrogation unless he initiates it. 451 U.S. at 484–485, 101 S.Ct. at 1885, 68 L.Ed.2d at 386. Defendant's motion to suppress was therefore properly granted.

The order is affirmed.

SMITH, J., concurs in separate opinion.

SNYDER, J., concurs in separate opinion of SMITH, J.

SMITH, Judge, concurring.

Given the pronouncements of the United States Supreme Court as cited in the opin-

---

1. As an abstract principle the assertion that evidence, otherwise trustworthy, may be used to impeach a criminal defendant though the exclusionary rule of *Miranda* has barred its use in the prosecution's case-in-chief is certainly correct. *See Oregon v. Hass*, 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975). The trial court in this case, however, has not expressly ruled that the state may not use defendant's statement and its fruits as impeachment. Nor has it made a find-

ing of untrustworthiness from which we might infer such a ruling. The issue the state raises in its third point is therefore not properly before us.

2. The trial court expressly found Pickett acted as an agent of the state when he questioned defendant about the murder. The record supports this finding.

ion of the court the decision herein is mandated and correct. Pickett was more than an "ear" in defendant's cell, he was also "a voice in the cell to encourage conversation for the 'ear' to record." *Kuhlmann v. Wilson,* — U.S. —, 106 S.Ct. 2616, 91 L.Ed.2d 364 (1986) (Burger, Concurring). We are bound by our oaths of office to apply the decisions of the U.S. Supreme Court. That oath does not preclude us from expressing our disagreement with the law we must apply.

The test of a confession's admissibility has traditionally been its voluntariness. Voluntariness in turn has been determined by freedom from coercion which could cause an involuntary and therefore non-credible confession. In *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) the court established certain guidelines to insure that a suspect was fully advised of his rights thereby presumably removing coercion from police interrogation. One of the rights that a suspect has to be advised of is his right to counsel. If he invokes that right the interrogation must cease until counsel is obtained. This is to allow him to be fully informed of his rights and legal position before making any further statement. It does not necessarily follow that counsel must thereafter be present whenever police discuss the case with the suspect for presumably the advice of counsel would be not to discuss the case with anyone. From this *Miranda* right has arisen a "right to counsel" under the Fifth Amendment not explicitly referred to therein. *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). That right of counsel and that explicitedly stated in the Sixth Amendment have served to move the focus of examination of confessions from voluntariness into the realm of whether the confession was "elicited" by the police or prosecution. *Spano v. New York,* 360 U.S. 315, 79 S.Ct. 1202, 3 L.Ed.2d 1265 (1959); *Massiah v. United States,* 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964); *Brewer v. Williams,* 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977); *U.S. v. Henry,* 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980); *Kuhlmann v. Wilson,*

*supra.* No longer is the reliability or voluntariness of the confession or statement the keystone to admissibility, but rather whether the police and prosecutor have conducted themselves in a "sporting" fashion. Apprehension and conviction of felons who prey upon law abiding citizens is not a game nor an athletic contest. It is a deadly serious battle to prevent a social cancer which threatens the very quality of life so treasured in a free society. The utilization of ruses, trickery, and deception, while possibly "unsporting", is not unwarranted in such a battle unless it transgresses a clearly defined constitutional right.

Defendant here was in no way coerced into giving the statement which has been suppressed. He did so voluntarily in apparent disregard or ignorance of the ancient adage that there is no honor among thieves. Nor was he denied the right of counsel. He simply disregarded or ignored counsel's advice to keep his mouth shut. Until the advent of the cases cited above I had not believed that the right to counsel was intended to protect suspects who ignore their counsel's advice through cupidity, stupidity, boastfulness, or remorse. Sheriff Nelson was investigating a murder, the most serious denial of constitutional rights imaginable. He in no way mistreated the defendant, or coerced him into confessing, or subjected him to custodial interrogation designed to break his will or override his mind. Defendant had consulted with his lawyer and had presumably received advice sufficient to protect himself which is the purpose, in my opinion, of the right to counsel. He did not do so. It is one thing to utilize the Fifth and Sixth Amendment to prevent the police and prosecution from compelling a defendant to incriminate himself; it is something entirely different to utilize those amendments to prevent them from permitting such incrimination.

I reluctantly concur.