STATE of Missouri, Respondent,

v.

Gale CLAYPOLE, Appellant.

No. WD 37309.

Missouri Court of Appeals,
Western District.

Oct. 21, 1986.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 25, 1986.

Application to Transfer Denied
Jan. 13, 1987.

Robert G. Duncan, Kansas City, for appellant.

Paul LaRose, Asst. Atty. Gen., Jefferson City, for respondent.

Before LOWENSTEIN, P.J., and
MANFORD and GAITAN, JJ.

GAITAN, Judge.

Defendant appeals his conviction in the Circuit Court of Clay County of first-degree arson, § 569.040 RSMo.1978 and second-degree arson, § 569.050 RSMo.1978. Defendant received sentences of five (5) years and three (3) years, respectively, to run consecutively. Defendant raises the following points on appeal: (1) that there was insufficient evidence to support the conviction of first-degree arson; (2) the trial court failed to instruct the jury in accordance with MAI–CR 2d 2.70; (3) the trial court failed to instruct the jury in accordance with MAI–CR 2d 2.50; and (4) the trial court abused its discretion in permitting certain rebuttal evidence. The judgment of the trial court is reversed.

Defendant was a part-time Police Chief in Orrick, Missouri. He entered into a casual conversation with Larry Crowley, Tony McGlothlin, and Tim Sherier on the evening of August 18, 1984. The conversation eventually turned to an uninhabited house in Orrick, called the Griffith house. The men agreed the house was an eyesore. Sherier mentioned burning the house down. Defendant responded that he would not care and that no one would get in trouble. Defendant said he would not investigate the fire and the fire department would probably let the house burn. Although Crowley, McGlothlin, and Sherier stated the conversation occurred in a joking context, they believed defendant to be serious that no one would get in trouble.

Later that night, Crowley, McGlothlin, and Sherier met Kenneth Eldridge outside a local bar. Defendant drove up and asked Sherier to go for a ride in the patrol car. Defendant drove by another uninhabited house in Orrick, the Broadhurst house, and told Sherier that no one would get in trouble if that house burned also. Defendant dropped off Sherier back at the bar.

Around 1:00 a.m. on August 19, 1984, Sherier, Crowley, McGlothlin and Eldridge set the Griffith house on fire. After the fire department and defendant arrived at the fire, Sherier drove back to the Griffith house and asked if defendant knew how the fire started. Defendant told Sherier that lightening must have caused the fire.

On the evening of August 25, 1984, defendant saw Sherier, Eldridge and Timothy Shatto on Front Street in Orrick. Defendant called Sherier and Eldridge to the patrol car and asked them how they got the fire at the Griffith house started so fast. Defendant then took Sherier for a ride past the Broadhurst house and asked Sherier if they were going to burn it too.

Later that evening, Sherier informed Tim Shatto of his plan to burn the Broadhurst house at 3:00 a.m. Sherier assured Shatto they would not get in trouble because defendant wanted the house burned. Shatto said he would help and would pick up Sherier later that night.

Shatto then drove to Excelsior Springs and informed the police about the plan to burn the Broadhurst house. The Excelsior Springs Police contacted Deputy Welker of the Ray County Sheriff's Department. Welker told Shatto he would wait in Orrick for Shatto to drive past the Bear Cat Den after Shatto picked up Sherier.

Welker then drove to Orrick accompanied by reserve deputy Ron Pendleton. Shatto and Sherier drove past Welker and Pendleton parked at the Bear Cat Den. Shatto and Sherier drove to a location close to the Broadhurst house and ran into the house where Sherier started the fire. They ran back to the car and drove by the house. Sherier ran back into the house, to see if the fire was started. Shatto went to tell Welker that Sherier was checking on the fire and then went back to pick up Sherier. Welker arrested Shatto and Sherier, while Pendleton notified the neighbors near the Broadhurst house. The evidence is clear that the fires at issue here were incendiary in nature. This was admitted by several of the persons who started the fire.

Defendant was charged by information with two counts of first-degree arson and tried before a jury. The jury was instructed that defendant's liability was that of an accomplice if he aided or encouraged others in the commission of these crimes. The

defendant was found guilty of first-degree arson of the Griffith house and second-degree arson of the Broadhurst house.

Although the defendant has raised a number of issues by this appeal, we shall address his third point first. That point raises the failure of the court to instruct on MAI–CR 2d 2.50.

Supreme Court Rule 28.02(a) provides that MAI–CR instructions in the 2.00 Series must be given, whether requested or not, where applicable under the law to the facts. Subparagraph (e) of that Rule provides that failure to instruct the jury under that Rule is error, its prejudicial effect to be judicially determined.

The Notes On Use under MAI–CR 2d 2.50 provide:

1. This instruction must be given in all criminal cases, whether requested or not, "whenever necessary," Rule 26.02(6), which means whenever there is evidence of defendant's general reputation of good character.

The applicable provisions in Rule 26.02(6) referred to in the Notes are now covered in Rule 28.02(a).

 While proof of a party's character trait, by proof of reputation or single conduct is generally inadmissible, there are exceptions to that rule. One of those exceptions is where defendant's character trait has been placed in issue.

The testimony of defendant as well as his witnesses Robert McFee, George Gowing and Trooper Dwayne Isringhausen (Missouri State Highway Patrol), given without objection, placed defendant's character in issue. This is particularly relevant given testimony regarding the character of one of the state's chief witnesses and co-conspirator in the crimes, Timothy Sherier. Mr. Sherier's character was described as being a loud mouth, bragger and dishonest by Mr. Isringhausen.

In *State v. Jackson*, 373 S.W.2d 4, 9 (Mo.1963), the defendant was charged with assault with intent to kill with malice aforethought. The court held that:

It is our conclusion that the testimony of John Taylor Brady, adduced in behalf of defendant, constituted material, relevant and substantial evidence of defendant's general reputation as a peaceful, law-abiding, non-violent person "in the circle where his livelihood [was] followed"; that such evidence having been admitted without objection, placed his character in those respects in issue as a matter for consideration of the jury; and that the trial court erred to the prejudice of defendant in not instructing the jury as required under S.Ct. Rule 26.02(6).

We believe that logic applies here. Here the defendant by his testimony as well as those witnesses called on his behalf testified as to his reputation for honesty and law abidance. That testimony placed his character into issue. *State v. Reilly*, 674 S.W.2d 530 (Mo banc 1984).

The omission of this instruction violated *MAI–CR* and *Rule 28.02(a)* and that failure is hereby determined to be reversible error. The judgment of the trial court is reversed and the case is remanded for retrial.

There were other issues raised on appeal which are worthy of comment because on retrial these issues are likely to reoccur. First, the failure to give MAI–CR 2d 2.70 constitutes error and defendant made a timely objection in his motion for new trial. The State would be well advised to avoid this error on retrial.

If the case is retried, the parties are advised to pay special attention to the question of the proximity of the house set afire to other persons. Section 569.040, *supra.*

The judgment of the trial court is reversed and the case is remanded for retrial.