STATE of Missouri, Respondent,

v.

**Mark Anthony WILLIAMS, Appellant.**

**No. WD 38910.**

Missouri Court of Appeals,
Western District.

Dec. 22, 1987.

---

9. This court notes that the foregoing event is not a part of the record.

Patrick J. Eng, Columbia, for appellant.

William L. Webster, Atty. Gen., Carrie Francke, Sp. Asst. Atty. Gen., Jefferson City, for respondent.

Before KENNEDY, C.J., and SHANGLER and LOWENSTEIN, JJ.

LOWENSTEIN, Judge.

The defendant Williams appeals a Boone County jury verdict against him for murder in the second degree of a two year old boy. Sentence was set at twelve years. He does not question the sufficiency of the evidence.

Williams had been living with Amber Tripp, her eleven year old, and the victim. Several days prior to his death the child suffered bruises after being left with the defendant. On the day in question the mother, a nurse, worked a full day shift at a Columbia hospital while Williams acted as babysitter. When the mother got home that evening the defendant said not to

wake the victim. When Amber went to change the child she discovered bruises on the child's lower abdomen. Williams told her not to worry. The mother became worried, and called a doctor. The child was taken to a hospital but died within a few hours. Williams said he was sorry and not to "tell anyone I did this." An autopsy disclosed over 70 bruises on the chest and abdomen, all having been incurred within 24 hours of death. There were tears in the abdominal organs and around the rib cage, all caused by a blunt object. Williams testified the child had suffered a fall.

■ While awaiting trial Williams shared a jail cell with Bert Singletary. Williams concedes the state called Singletary as a rebuttal witness. Over Williams' objection the witness said the defendant had told him he had accidentally "kicked the kid down the stairs" and then hit and shook him to get him breathing again. Error is alleged for the prosecution's failure to disclose Singletary as a witness until only a few days prior to trial. Judge Hamilton did allow defense counsel to interview the witness. A statement of Singletary was also introduced. The state says the sheriff gave the statement to him the same day it was sent to the defendant. "The rule requiring endorsement of the State's witnesses does not apply to rebuttal witnesses." *State v. Tyler*, 622 S.W.2d 379, 385 (Mo.App.1981).

> Where a rebuttal witness is not called to rebut a defense of alibi, there is no obligation to make disclosure and such witnesses may be freely called to contradict or impeach the defendant's own evidence. *State v. Lutjen*, 661 S.W.2d 845, 849 (Mo.app.1983). It is, of course, within the discretion of the trial judge to receive such testimony having in mind principles of fundamental fairness. In this case, there was neither unfairness nor surprise because the same testimony had been given during the presentation of the state's case....

*State v. Burton*, 721 S.W.2d 58, 63 (Mo. App.1986).

■ The next point implies Singletary was a "planted" police informant and an agent of the state, and that had he been disclosed earlier, Williams could have "perhaps moved to have Bert Singletary's testimony suppressed." His reliance on *State v. McMullan*, 713 S.W.2d 881 (Mo.App. 1986) is misplaced. In *McMullan*, the prisoner after asking to talk with his lawyer was put in a cell with a prisoner who was to get the defendant to talk. A suppression of the conversation resulted for the situation being a "functional equivalent" of direct police interrogation. There was no evidence here of Singletary being a plant. In any event Williams, as will be noted later, had voluntarily given a statement to the sheriff, so there is no valid complaint the state was questioning him after his request to have counsel present.

■ The next point concerns the failure of the trial court to grant a continuance because Williams' sister, Gloria Brown, was unable to testify having just been injured in an auto accident. Williams presents this point without case authority, and with nothing more than the assertion that Brown, who lived in Phoenix, Arizona, would impeach the testimony of the victim's mother. No showing of an abuse of discretion having been put forward, *State v. Sloan*, 666 S.W.2d 787, 789–90 (Mo.App. 1984), and no showing how the trial judge's action prejudiced or was oppressive to Williams, *State v. Adkins*, 678 S.W.2d 855, 858 (Mo.App.1984), this matter is denied.

■ The next two points relate to a video taped statement of Williams made to a sheriff's deputy the day the death occurred. The contents of the statement were consistent with Williams' trial testimony and that of the deputy Perry who took the statement. The trial court refused to allow Williams to introduce the video. The state had made an objection the interview was hearsay. Counsel for Williams argued it was an exception because the statement showed his client's state of mind near the time of the child's death. Assuming without deciding whether the video statement should have been admitted, no matter what the objection, this ruling will not be disturbed on appeal. In *State v. Whiteaker*, 499 S.W.2d 412, 418

(Mo.1973); *cert. den.* 415 U.S. 949, 94 S.Ct. 1472, 39 L.Ed.2d 565 (1974), the supreme court, under the same circumstances said:

> Practically all of the above was testified to by defendant, Sheriff Appley and other witnesses during the trial. The point does not warrant an exploration of the law relating to the admissibility of defendant's statement in defendant's behalf. It simply was not prejudicial and has no merit in this case.

After the rebuttal testimony of Singletary was introduced, the video was again offered by Williams as proof of a prior consistent statement of the defendant after the "impeachment." Again, assuming without deciding the Williams video was properly admissible at this time, he cannot show an abuse of discretion on the part of the trial court for surrebuttal, *State v. Sanders,* 714 S.W.2d 578, 586 (Mo.App. 1986), nor prejudice requiring reversal since the content of and time the statement was given was already before the jury. *Whiteaker, supra,* at 418.

■ The next point in the brief concerns the defendant's being limited on redirect examination of one of his witnesses called for his reputation for truth and veracity. Witness Robert Gray was asked on cross-examination if he had heard Williams, as an employee of a hospital, had earlier assaulted and broken the nose of a retarded young man. The witness answered in the affirmative. On redirect the state's objections to defense counsel's attempts to question the witness as to the surroundings of this conduct were sustained. This action by the court was not an abuse of discretion and does not constitute error. *State v. Thomson,* 705 S.W.2d 38, 40 (Mo.App.1985).

■ Williams' next point charges trial court error in refusing to give the jury an instruction on his good character. The first paragraph of MAI–Cr2d 2.50 provides:

2.50 Character of Defendant Bearing on Guilt or Innocence

*Evidence has been introduced* concerning the *reputation of defendant as to those traits of character which ordinarily would be involved in the commission of an offense such as that charged in this case.* This evidence was received because a jury may reason that a person of good character as to such traits would not be likely to commit the offense charged against the defendant. Therefore, you should consider such evidence along with all of the other evidence in the case in determining the guilt or innocence of the defendant.

Notes on Use

1. This instruction *must be given in all criminal cases,* whether requested or not, "whenever necessary," Rule 26.-02(6), which means *whenever* there is *evidence of defendant's general reputation of good character.*

2. An *attack upon the credibility* of the defendant *as a witness* by proof *of his reputation for truth or veracity or by cross-examination or by proof of prior convictions does not constitute evidence putting the defendant's character as a party in issue.* State v. Williams, 337 Mo. 884, 87 S.W.2d 175 (1935). See also *State v. Robinson,* 344 Mo. 1094, 130 S.W.2d 530 (1939), holding that proof of defendant's reputation for being quarrelsome and turbulent is admissible under limited circumstances in self-defense situations. In addition, proof of other crimes or criminal conduct of defendant may be admissible for numerous purposes, and their introduction into evidence may be allowed although defendant has not put his character in issue. McCormick cn Evidence, section 157. *In all such cases MAI–Cr 2.50 should not be given unless and until defendant opens up his character as a party.* State v. Baldwin, 349 S.W.2d 212 (Mo. 1961).

3. Because of the vital distinctions noted in 2 above, the giving or refusal of MAI–CR 2.50 will not affect the question of whether or not an instruction may or should be given limiting the purposes for which evidence other than that of defendant's character as a party was received. See MAI–Cr 3.58 and 3.60. (Emphasis added.)

This court in *State v. Claypole,* 721 S.W. 2d 66, 68 (Mo.App.1987), stated the failure to instruct the jury on character where there is evidence of general reputation of good character is error, its prejudicial effect to be judicially noted.

Williams called five witnesses who testified of his reputation of being truthful, forthright, dependable, good-hearted, honest, easy to be around, a good neighbor and of having a good reputation. Most of this evidence concerned Williams' reputation for truth and veracity, which would bear on his credibility as a witness and not amount to evidence of his character traits involved with the offense of murder. *Notes on Use, 2, supra.* Although the distinctions causing 2.50 to be given are sometimes vague, and some judges have expressed reservations about the use of character evidence in general, *State v. Hendrix,* 699 S.W.2d 779, 780 n. 2 (Mo.App.1985), it is questionable here whether the testimony went beyond "reputation for truth and veracity" to "character".

A brief examination of relevant cases is in order. In *Hendrix, supra,* the court said character evidence is allowed on the premise a person with "good" character traits is unlikely to commit a crime inconsistent with those traits. 699 S.W.2d at 780. In *Hendrix,* an assault conviction was reversed for failure to give MAI 2d 2.50. In *State v. Claypole, supra,* this court found this omission reversible in an arson case where there was evidence given without objection of "honesty and law abidance ... which placed ... character in issue." 721 S.W.2d at 68. A witness in *Claypole* said the defendant was "a peaceful, law abiding, non-violent person." *Id.* See also, *State v. Wells,* 586 S.W.2d 354, 359 (Mo.App.1979), where the appellate court reversed for failure to give the character instruction in a robbery case where three of four witnesses said the defendant was honest and trustworthy; *State v. Antwine,* 506 S.W.2d 397 (Mo.1974), where the evidence of the defendant being a honest and upright required the instruction in a charge of unlawful sale of beer.

More relevant to the factual setting here are cases such as *State v. Taylor,* 726 S.W.2d 335, 338 (Mo. banc 1987), where the Supreme Court of Missouri said testimony on the defendant's general reputation for truth and veracity did not meet the language of MAI–CR 2d 2.50 "as to those *traits of character which ordinarily would be involved in the commission* of an offense as charged in this case." (Emphasis in original.) The court said evidence of reputation for truth and veracity was not of any character trait involved in any element of the offenses of sodomy and attempted rape by Taylor of a twelve year old. *Id.* A similar failure to find a necessity to give 2.50 occurred in *State v. Martin,* 651 S.W.2d 645, 656 (Mo.App.1983), where the Southern District reiterated 2.50 "need not be given unless there is substantial evidence of the defendant's good character." *Id.* In a capital murder case testimony of the defendant being truthful and an "honorable individual did not constitute substantial evidence of those traits of character involved in a capital murder case." *Id.* *Martin* was quoted as authority in *State v. Manning,* 682 S.W.2d 127, 131 (Mo.App.1984), where the opinion of the court states Missouri courts do not require a character instruction in assault or murder cases, "unless there was evidence of defendant's reputation for the specific traits of character as a peaceable, quiet or law-abiding citizen." This opinion, citing *State v. Hayes,* 295 S.W. 791, 793 (Mo.1927), states, "Evidence of defendant's reputation for honesty does not require an instruction on character in a prosecution for assault or murder...." The defendant's reputation for truthfulness and veracity did not require the instruction. In *State v. Woodfin,* 559 S.W.2d 273, 277–78 (Mo.App.1978), a witness' testimony as to the accused's reputation with "friends" in the "community" did not require an instruction on good character, but even if the testimony was sufficient, no prejudicial error resulted.

On the evidence in this case there is serious doubt whether Williams' evidence constituted substantial evidence of a trait involved as an element in the charge of second degree murder of the two year old

victim as enunciated in *Taylor, Martin,* or *Manning, supra.* Williams was not described as law abiding or peaceable. In fact, even the *Claypole* language of "peaceful" and "non-violent" was not elicited from the witnesses for Williams. Williams did not produce any evidence of his character traits in the handling of children. The closest any mention of his conduct with children came when the state cross-examined one of his witnesses about Williams having spanked the victim so hard on a previous occasion so as to require medical attention. The evidence from defense witnesses was confined almost exclusively to Williams' reputation for truth and veracity, which goes to credibility. The rest, such as being a good employee, good neighbor, etc., did not amount to substantial evidence of traits relating to this crime. Even if the instruction should have been given, no reversible error to the defendant resulted in the failure to do so. *Woodfin, supra.* The point is denied.

■ Although unobjected to at trial, Williams' next point could be denied no matter what the scope of review. His final point decries the court's "closure" of the trial. The jury had complained of being unable to hear witnesses because of people talking outside the courtroom and that noise becoming bothersome as persons would come in and out of the courtroom into the hallway. To correct this problem the court had a deputy stand by the door and spectators were advised to enter or exit only during periods of recess. This action by the court made sense and did not deny Williams an open public trial.

■ One other matter needs to be addressed. Over one month after oral argument, and presented for the *first* time in this case, Williams now asks to supplement the record with unverified documents showing Singletary was a paid police informant in 1985. The two were cellmates beginning in the early part of March, 1986. This court is bound to the record and evidence at trial. *State v. Worley,* 353 S.W.2d 589, 596 (Mo.1962). As was done in *State v. Coleman,* 660 S.W.2d 201, 221 (Mo.App. 1983), the motion is treated as being in the nature of part of the new trial motion based on "newly discovered evidence." Section 547.020, RSMo 1986. The requisites for securing a new trial on newly discovered evidence are:

1) that the evidence has come to the knowledge of the defendant since the trial; 2) that it was not due to any lack of diligence on the part of defendant or his/her counsel that the evidence was not discovered earlier; 3) that the evidence is so material that it would probably produce a different result on retrial; and 4) that the evidence is not cumulative or merely relevant as impeachment of the credibility of a particular witness.

*State v. Klaus,* 730 S.W.2d 571, 581 (Mo. App.1987). There is nothing within the "newly discovered evidence" which would satisfy any of these requirements, *State v. Coleman, supra,* at 221; *State v. Klaus, supra,* at 581.

The judgment is affirmed.

All concur.