**STATE of Missouri, Respondent,**

v.

**Terry L. HAMMONDS, Appellant.**

**No. 45114.**

Missouri Court of Appeals,
Eastern District,
Division Three.

March 15, 1983.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 13, 1983.

Application to Transfer Denied
June 30, 1983.

Janet F. Catalona, Clayton, for appellant.

John Ashcroft, Atty. Gen., Kristie Green, Asst. Atty. Gen., Jefferson City, George

Westfall, Pros. Atty., Clayton, for respondent.

REINHARD, Judge.

Defendant was convicted in Count I of first degree robbery, a violation of § 569.-020, RSMo.1978, and in Count II of attempted first degree burglary, a violation of § 564.011, RSMo.1978. He was sentenced to a term of 18 years on Count I and a concurrent term of 15 years for Count II. We reverse and remand for a new trial.

Daniel Baier, a deliveryman for Imo's Pizza in Webster Groves, Missouri, testified that on October 3, 1980, at 8:30 p.m., he arrived at a residence at 818 Holland in Webster Groves to make a pizza delivery. The house was dark and had been vacant for some time. He knocked on the door and waited for about a minute. He then felt "something sharp" in his side, turned and saw a man with a knife wearing a gray hooded sweatshirt. The man told Baier to give him all of his money. Baier dropped the pizza and gave him approximately $60.00 in cash. Baier testified that he returned to his car and as he drove away, the headlights on the car illuminated the robber running behind the house. Baier identified the man later from photographs and at trial as defendant.

On October 8, at approximately 7:15 p.m., Imo's Pizza in Webster Groves received an order to be delivered to 153 Willis (a couple of blocks from 818 Holland). The owner of the store called the telephone number given by the customer and received no answer. He then reported the suspicious call to Officer Lacey of the Webster Groves Police Department.

Officer Lacey testified that he dressed in an Imo's delivery uniform, picked up the order at the Webster Groves store, and drove the regular deliveryman's car to the Willis address. As the officer approached the house, the defendant, wearing blue jeans, gray hooded sweatshirt and holding a large knife, "appeared out of the darkness" and ordered the officer to give him the money. The officer threw down the pizza boxes, "yelled police" and pulled out his service revolver. Defendant lunged at the officer with his knife. The officer shot defendant. Paramedics were summoned and defendant was taken to the hospital. A knife and sheath were recovered in the front yard of the house.

Defendant testified in his own behalf. He denied robbing Daniel Baier or attempting to rob officer Lacey. He stated that on October 3, 1980, he was at his uncle's karate studio from 6:30 to 10:30 p.m., with his uncle and fifteen other students. He further testified that on October 8, at about 8:00 p.m., he walked to the residence at 153 Willis Avenue to see Steve Vance, the boyfriend of one of the occupants of the house. He stated that officer Lacey followed him up to the house and shot him in the back without provocation.

Defendant raises four points on appeal, but we need only address defendant's third point. In it, defendant contends the court erred in overruling his objection to comments made in the state's closing argument.

Initially, on the morning of trial, defendant sought to endorse his uncle, Bruce Hammonds, as an alibi witness. The assistant prosecuting attorney objected because the defendant had tardily disclosed the witness and the trial court sustained the state's objection and excluded defendant's uncle as a witness.

After the defendant testified on direct examination, the assistant prosecuting attorney, on cross-examination, asked defendant if his uncle was in the courtroom, to which defendant replied yes. The assistant prosecuting attorney further requested defendant's uncle to stand up in the courtroom and he was pointed out for the jury. Then, in the first part of closing argument, the assistant prosecuting attorney stated:

Now, Mr. Hammonds has told you he was at his uncle's house practicing karate. He says there are thirteen people that could have been witnesses. You saw his uncle sitting in this courtroom yesterday. How many of these people testified for Mr. Hammonds that they actually saw him that night? Think about that when

you think about the believability and credibility of any witness that has testified in this courtroom.

Nobody else will testify for this man because they don't want to perjure themselves about where they were on October 3 of last year.

In the second part of closing argument, the assistant prosecuting attorney stated:

She wants to tell you that Webster Groves and Terry Hammonds' family that are sitting in this courtroom are so concerned about him. You're darned right they're concerned because, ladies and gentleman, this man belongs in the penitentiary. And they're so concerned about him that Bruce Hammonds, a witness, an alibi witness, did not take this stand and testify for Terry Hammonds. That is how concerned his family is for Terry Hammonds.

■ Although defendant made a general objection to the first part of the argument and made a general reference to it in his motion for new trial, we agree with the state that this was not sufficient to properly preserve the matter for review. Thus, we must review the point under the plain error standard. Rule 30.20. But, even under this more stringent standard, our review of the entire record convinces us that plain error affecting defendant's substantial rights occurred, resulting in manifest injustice and a miscarriage of justice.

■ We acknowledge that a prosecutor can draw an unfavorable inference from defendant's failure to produce alibi witnesses available to him. *State v. Ivory,* 609 S.W.2d 217 (Mo.App.1980). But it is also well settled that in Missouri it is improper for a prosecutor to comment on or refer to evidence or testimony that the court has excluded. *State v. White,* 440 S.W.2d 457 (Mo.1969); *State v. Williams,* 376 S.W.2d 133 (Mo.1964); *State v. Price,* 541 S.W.2d 777, 778 (Mo.App.1976). In *Price,* this court reversed defendant's conviction because the state commented in closing argument on defendant's failure to call alibi witnesses who had been excluded at the request of the state. *See State v. Ivory,* 609 S.W.2d 217 (Mo.App.1980). In *Price,* the issue was properly preserved and our review was not based on plain error.

The Supreme Court in *State v. Hurtt,* 509 S.W.2d 14, 15 (Mo.1974), stated:

In order to invoke the plain error rule there must be a "sound, substantial manifestation ... a strong, clear showing, that injustice or miscarriage of justice will result if the rule is not invoked." [citation omitted] ... When guilt is established by such overwhelming evidence no injustice or miscarriage of justice will result from a refusal to invoke the rule.

The strength of the state's case is a prime factor in the determination of whether the error committed by the trial court resulted in a manifest injustice or a miscarriage of justice. *State v. Watson,* 588 S.W.2d 20 (Mo.App.1979). On occasion, prosecutorial misconduct can result in manifest injustice, even though the state has a strong case. *See State v. Williams,* 646 S.W.2d 107 (Mo. 1983). Such circumstances exist here.

At the insistence of the assistant prosecuting attorney, defendant's uncle was excluded as a witness because of his late disclosure to the state. The jury could not know this. Yet, the assistant prosecuting attorney intentionally misrepresented the facts and informed the jury that the witness did not testify because he did want to perjure himself and the jury should consider that in determining the "believability and credibility" of the witnesses. The comment was not accidental, but was deliberate, and cannot be excused. In these circumstances, this constituted error affecting defendant's substantial rights resulting in manifest injustice. We need not consider defendant's other points as they may not occur on retrial.

Reversed and remanded for a new trial.

CRANDALL, P.J., concurs.

CRIST, J., dissents in a separate opinion.

CRIST, Judge, dissenting.

One bridge too far! There was no manifest injustice nor miscarriage of justice.

There was error. The prosecutor went too far. But Rule 30.20 was not intended to be used to punish the prosecutor. I would affirm the judgment.