STATE of Missouri,
Plaintiff-Respondent,

v.

Michael LULEFF, Defendant-Appellant.

No. 51918.

Missouri Court of Appeals,
Eastern District,
Division Three.

March 24, 1987.

Motion for Rehearing and/or
Transfer Denied
April 23, 1987.

Application to Transfer Denied
June 16, 1987.

Melinda K. Pendergraph, Lew Kollias, Office of State Public Defender, Columbia, for defendant-appellant.

William L. Webster, Atty. Gen., Carrie Francke, Sp. Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

CRANDALL, Judge.

Defendant, Michael Luleff, appeals from his conviction, after a trial by jury, of receiving stolen property. § 570.080 RSMo (1986). He was sentenced to four years' imprisonment. We reverse and remand.

The evidence adduced at trial showed that, on October 10, 1984, two deputy sheriffs of Warren County arrived at defendant's home to investigate a family disturbance. Defendant lived in the house alone, having been separated from his wife, Cindy Luleff (wife), for about two months. One deputy testified that, when he and the other officer arrived at the residence, wife admitted them. She volunteered information that defendant kept cocaine and money in a certain safe in the house. The deputies found a packet containing a "white crystalline substance" on wife's person.

Wife's information about the cocaine in the safe was used as the basis to secure a search warrant to seize the cocaine from the safe. Later that same day, the officers returned to the house with a search warrant and broke open the safe. Inside, they discovered photographs, personal papers, an automatic pistol, and a Vehicle Identification Number (VIN) plate. The sheriff's deputy testified that they found neither cocaine nor money, as wife had indicated.

The deputy examined the VIN plate and concluded immediately that the numbers on it had been altered. He seized the plate and took it outside to a parked Massey Ferguson tractor from which the VIN plate was missing. The officer compared the seized VIN plate with the place on the tractor where it appeared that a VIN plate had been located. The plate coincided perfectly with the marks which indicated where a VIN plate had been attached on the tractor.

After some investigation, the owner of the tractor was found. He testified at trial that a similar Massey Ferguson tractor had been stolen from his nursery business three years previously. He identified that tractor as his on the basis of several distinguishing welding marks as a result of repairs which he had made on the tractor.

The sheriff of Warren County testified that, on October 16, 1984, his department applied for a search warrant for the tractor. He attributed the delay in seeking a warrant for the tractor to muddy ground conditions which made it difficult to seize the tractor. On October 17, the sheriff went to defendant's home. When defendant was not there, the sheriff inquired about him in the neighborhood. One neighbor, who later testified at trial, informed the police that she had seen defendant drive the tractor down the road and come back in another vehicle.

Shortly thereafter, defendant returned and voluntarily led the sheriff to the tractor, which was concealed in a shed on the property adjacent to defendant's. The sheriff seized the tractor. The neighbor who owned the property testified at trial that he hardly knew defendant and that he had not given defendant permission to use the shed on his property for any purpose.

Defendant testified at trial. He stated that he had purchased the tractor from an individual after answering an advertisement in the newspaper. He had not altered the identification numbers. He said that the VIN plate had fallen off of the tractor when he was plowing the fields. He had placed the VIN plate in the safe because he needed it to buy parts for the tractor. He reported that he had hidden the tractor in his neighbor's shed because he feared that his wife would put sugar in the gas tank. He testified that, when he had returned to his home on October 14, 1984, he had found his house ransacked; his safe broken open; and several items of value taken from his home and safe. Wife did not testify at trial.

■ Defendant first claims the trial court erred in admitting the VIN plate into evidence because it was obtained as a result of an illegal search and seizure. Defendant moved to suppress the VIN plate in a pretrial motion and renewed his objection at trial. Our inquiry is focused on the validity of the search warrant issued for the cocaine in defendant's safe. Our review of a ruling on a motion to suppress and on the admissibility of evidence at trial is limited to a determination of whether the evidence was sufficient to sustain the trial court's finding. *State v. Baskerville,* 616 S.W.2d 839, 843 (Mo.1981).

The search warrant was issued on October 10, 1984. The warrant was based upon the application of two deputy sheriffs. Both affidavits stated: "Cindy Luleff stated to affiant and [the other deputy] that Mike Luleff had cocaine in the above described safe." The safe was described as follows: "Approximate 24″ × 30″ Tan safe located at Lot 14, Lost Creek, Warren County, Missouri. Said safe being located in a basement home at said address and possessed by Mike and Cindy Luleff."

Defendant's attack on the validity of the search warrant is two-pronged. He first argues that the "affidavits were insufficient to establish probable cause because the affiants merely stated a conclusion and not facts which would establish a basis for believing that cocaine was in [defendant's] safe." Defendant argues that, although the officers repeated wife's statement verbatim, they not only took her statement out of context, but also neglected to inform the magistrate of the surrounding circumstanc-

es; namely, the domestic quarrel during which wife had shot defendant three times in the chest.

Under § 542.276 RSMo (1986), a peace officer may apply for a search warrant, provided the application meets certain requirements [1] and is supplemented by written affidavits.[2] If it appears from the application and any supporting affidavits that there is probable cause to believe that property subject to seizure is on the person or at the place or in the thing described, a search warrant shall immediately be issued. Section 542.276.4 RSMo (1986).

■ Probable cause is to be determined by looking at the "totality of the circumstances." *State v. Hodges,* 705 S.W.2d 585, 588 (Mo.App.1986) (citing *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)).

[T]he traditional standard for review of an issuing magistrate's probable cause determination has been that so long as the magistrate had a 'substantial basis for ... conclud[ing]' that a search would uncover the evidence of wrongdoing, the Fourth Amendment requires no more.... The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

1. Under § 542.276.2, the application shall:
    (1) Be in writing;
    (2) State the time and date of the making of the application;
    (3) Identify the property, article, material, substance or person which is to be searched for and seized, in sufficient detail and particularity that the officer executing the warrant can readily ascertain it;
    (4) Identify the person, place, or thing which is to be searched, in sufficient detail and particularity that the officer executing the warrant can readily ascertain whom or what he is to search;
    (5) State facts sufficient to show probable cause for the issuance of a search warrant;

    (6) Be verified by the oath or affirmation of the applicant;
    (7) Be filed in the proper court.

2. Section 542.276.3 provides:
    The application may be supplemented by a written affidavit verified by oath or affirmation. Such affidavit shall be considered in determining whether there is probable cause for the issuance of a search warrant and in filling out any deficiencies in the description of the person, place, or thing to be searched or of the property, article, material, substance, or person to be seized. Oral testimony shall not be considered.

*Gates,* 103 S.Ct. at 2331–2332. Only the probability, and not a *prima facie* showing, of criminal activity is the standard of probable cause. *Id.*

■ The sole issue is whether, under the "totality of the circumstances," it is clear that, based upon the information in the affidavits, the issuing magistrate had a substantial basis for concluding that probable cause existed. The application in the present case sought authorization to search for cocaine and detailed its location in a specific tan safe in defendant's home. The supporting affidavits of the two deputies were attached. Both affidavits attested to Cindy Luleff's statement that defendant had cocaine in the safe. The safe was described as being "possessed by Mike and Cindy Luleff." The clear inference is that Cindy Luleff is defendant's wife. It was not unreasonable for the magistrate to authorize a search of the safe for cocaine based upon the information of a wife that her husband had cocaine in a safe in their home. Wife's statement was a sufficient basis for the magistrate, engaged in a common sense reading of the supporting affidavits, to find probable cause.

Defendant posits that wife's statement is merely a conclusion. We cannot agree that it is a conclusion, except in a very theoretical sense. On its face, it is a statement of fact to the police officers.

Defendant also alleges that wife was unreliable. He contends that the information supporting the affidavits was provided by wife, who was "an angry, distraught, convicted drug dealer" and who had no personal knowledge that cocaine was in the safe. In addition, wife did not know the combination to the safe, and had not resided in the house for approximately two months.

Other facts, however, not in the application or affidavits, but known to the deputy sheriffs, bolster the deputies' reliance upon wife's statement about the cocaine. Wife had a record for the sale of a controlled substance. The deputies found on wife's person a packet containing a white crystalline substance, which was presumably cocaine. Defendant was known to the police

as a drug dealer. In addition, when the police arrived at the house in response to a domestic disturbance, they discovered that wife had shot defendant three times in the chest. These factors strengthen the reliability of wife's information as an informant rather than detract from it.

In the second prong of his first point, defendant challenges the validity of the seizure of the VIN plate and of the immediate search of the tractor with respect to this plate. He claims that both actions exceeded the scope of the warrant issued for cocaine in defendant's safe.

■ We first consider the seizure of the VIN plate from the safe, which defendant asserts is "not related to cocaine." In the execution of a search warrant, officers may seize items not specified in an otherwise valid warrant, when its seizure is within a recognized exception to the requirement for a search warrant. *State v. Clark,* 552 S.W.2d 256, 260 (Mo.App.1977). The plain view exception permits an officer to seize items without a warrant if: "(1) the evidence is observed in plain view while the officer is in a place where he has a right to be; (2) the discovery of the evidence is inadvertent; and (3) it is apparent to the officer that he has evidence before him." *State v. Holt,* 695 S.W.2d 474, 477 (Mo.App.1985). It is not necessary that recognition of the objects as evidence be made beyond a reasonable doubt, but only that the recognition satisfy a probable cause requirement. *Clark,* 552 S.W.2d at 261.

■ Here, the deputy had a right to be in the safe because the search warrant issued for the safe was valid. Although he did not discover cocaine, he did observe a VIN plate on which the numbers had obviously been altered. Based upon the officer's experience, the sight of this VIN plate, which had been removed from some vehicle and secreted in the locked safe, was sufficient to give the officer probable cause to believe that the plate was evidence incriminating defendant. The VIN plate was in plain view once the officer opened the safe pursuant to a valid warrant; and its seizure was not unlawful.

We next consider the search of the tractor parked outside of defendant's house. The search occurred when the officer matched some holes in the seized VIN plate with holes on the tractor which indicated the place where a VIN plate had been affixed.

■ In order for a defendant to have standing to assert that a search was in violation of the Fourth Amendment to the United States Constitution, he must have a legitimate expectation of privacy in the place or thing searched. *State v. Eidson*, 701 S.W.2d 549, 553 (Mo.App.1985). He must establish that *his* Fourth Amendment rights were violated and not those of a third party. *State v. Gollaher*, 628 S.W.2d 365, 366 (Mo.App.1982).

■ In the instant case, defendant was merely in possession of a stolen tractor. His interest in the stolen tractor is not the kind of right to ownership, control, or use that would raise in him a legitimate expectation of privacy in the tractor. Defendant has no standing to contest the search of the stolen tractor parked in plain view on his property. Defendant's first point in its entirety is denied.

In his second point, defendant claims the trial court erred when it overruled defendant's objection to certain comments made by the prosecutor during closing arguments; namely, that defendant had failed to produce a receipt for the sale of the tractor and that defendant did not need a VIN to buy parts for a tractor. Defendant failed to include these allegations of error in his motion for a new trial. We therefore review this point for plain error. Rule 30.20.

■ We first address the issue of the prosecutor's remarks about defendant's failure to produce a receipt. The pertinent facts are that, at trial, defendant's attorney attempted to introduce into evidence a receipt for the sale of the tractor. State objected on the basis of hearsay. Defense attorney then tried to qualify the receipt as

a business record.[3] State again objected and the objection was sustained. All of this occurred within the hearing of the jury.

During closing argument, the prosecuting attorney stated:

[Prosecutor]: Where's the receipt?

[Defense counsel]: Objection again, Judge. He objected to the receipt.

THE COURT: Overruled.

[Prosecutor]: It's easy to say how he did it and so on. It's convenient if you're lying to tell you that, but you are supposed to make this decision based on facts and evidence. Well, where's the receipt?

In rebuttal, the prosecutor again referred to the lack of a receipt as evidence of the alleged sale of the tractor:

[Prosecutor]: Another thing—seven thousand eight hundred dollars cash, *no receipt*. And, how did we learn that? Did any of the State's witnesses say that? No, because we don't know how he got the tractor. The only person who knows, ladies and gentlemen, is this man right here. So, are you bound by what he told you up here? Are you bound that that is when he got it, that that is what he paid for it and that's how he got it? No, you twelve people can decide whether he's telling the truth and would he want to say that and why would he say that ... there is a catch. *"Did you get a receipt? No."* So, are you bound by his testimony? I think not.

[Defense counsel]: I'll make an objection. He never said that he didn't receive a receipt, Judge.

(emphasis added). The trial court again overruled the objection.

In *State v. Hammonds*, 651 S.W.2d 537 (Mo.App.1983), this court reversed defendant's conviction on plain error. The error in *Hammonds* occurred when the State commented in closing argument on defendant's failure to call an alibi witness who had been excluded at the request of the

---

**3.** Defendant does not argue on appeal that the receipt was admissible. Nor has he furnished this court with the receipt as an exhibit. We therefore assume that the receipt was not admissible.

State. The jury was unaware that the State had objected to the endorsement of the witness on the basis of defendant's late disclosure of his intent to call him. *Id.* at 538. This court concluded that it was improper for the prosecutor to comment on or to refer to evidence or testimony that the trial court had excluded. *Id.* at 539.

*Hammonds* is dispositive of the case before us. Here, the prosecutor knew that defendant had a piece of paper which defendant alleged was the receipt for the sale of the tractor. The case is similar factually to *Hammonds* in that the prosecutor successfully excluded the receipt from being introduced into evidence. Yet, during closing argument, the prosecutor repeatedly queried: "Where's the receipt?" He then responded that there was none. The only fact which distinguishes this case from *Hammonds* is that, here, the jury was cognizant that some sort of document existed which defendant had attempted unsuccessfully to introduce into evidence at trial, whereas in *Hammonds* the jury was unaware that the State had successfully excluded the evidence.

In this case, the statements of the prosecuting attorney were not just an observation on the authenticity of the document which had been offered by defendant as evidence of the sale. The comments were tantamount to an absolute denial of the existence of any such document. The remarks were not accidental, but were deliberate. Additionally, defendant's objections were overruled, thereby giving the prosecutor's argument the imprimatur of the trial court. The error affected defendant's substantial rights and resulted in manifest injustice. This error therefore mandates a reversal of defendant's conviction.

▄▄ In the second part of his second point, defendant argues that the prosecutor made an impermissible closing argument when he said that a VIN was not needed to buy tractor parts. Defendant failed to object to the prosecutor's statements at trial. On appeal, he claims, however, that these comments intimated to the jury that the prosecuting attorney knew facts which were not in evidence and which pointed to defendant's guilt.

Here, the challenged remarks were in response to defendant's testimony that the reason he placed the VIN plate in his safe was to make sure that he had the number to order parts. The prosecutor's argument that a VIN was not necessary to obtain parts was merely an appeal to common sense and does not rise to the level of plain error. The second part of defendant's second point is denied.

In his third point, defendant avers error in the trial court's refusing to suppress evidence concerning the warrantless search and seizure of the Massey Ferguson tractor from a neighbor's shed. He asserts that the second search warrant obtained by the sheriff for the tractor did not authorize the tractor to be seized from his neighbor's property. As discussed in Point One, defendant has no standing to contest the search and seizure of a stolen tractor particularly when the tractor is found on someone else's property. Defendant's third point is denied.

In his fourth point, defendant challenges the sufficiency of the evidence to support his conviction for receiving stolen property. He contends that he was entitled to a judgment of acquittal because mere possession of an altered VIN plate did not indicate the requisite element of either knowledge or belief that the tractor was stolen.

In testing the sufficiency of the evidence, facts and appropriate inferences intelligently drawn therefrom must be assessed in the light most favorable to the State and all adverse inferences and evidence disregarded. *State v. Allen,* 669 S.W.2d 569 (Mo.App.1984). The question is whether there is sufficient evidence from which reasonable individuals could conclude that defendant is guilty. *Id.* at 570.

▄▄ Here, defendant was found in possession of a stolen tractor. Additionally, the VIN plate had been removed from the vehicle and secreted in a locked safe. Defendant's explanation that he needed the identification number to buy parts for the tractor is specious at best. The tractor was found concealed in a shed on property

adjacent to defendant's. The shed had been used without the permission of the property owner, with whom defendant was only slightly acquainted. This evidence was sufficient to establish that defendant knowingly retained stolen property for the purpose of depriving the owner of a lawful interest therein. *See* § 570.080. Defendant's fourth point is denied.

The judgment of the trial court is reversed and the cause remanded for a new trial.

PUDLOWSKI, P.J., and KAROHL, J., concur.