**STATE of Missouri, Plaintiff–Respondent,**

v.

**Bruce YOUNG, Defendant–Appellant.**

**No. 55525.**

Missouri Court of Appeals, Eastern District, Division Four.

Nov. 21, 1989.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 21, 1989.

Ernest L. Keathley, Jr., St. Louis, for defendant-appellant.

William L. Webster, Atty. Gen., Ronald L. Jurgeson, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

STEPHAN, Judge.

Defendant, Bruce Young, was charged with the Class B felonies of rape and sodomy, and was indicted by a grand jury on March 12, 1988. On August 3, 1988, the State filed an information in lieu of indictment changing the charge in Count I to attempted rape, a Class C felony. Defendant was found guilty of attempted rape on August 5, 1988. The jury was unable to reach a verdict on the sodomy charge. Defendant was sentenced to one year in the St. Louis County Jail.

The victim, a nine year old girl, was in Bellefontaine Park on a Saturday afternoon in January 1988. She began to play hide and seek with one of her schoolmates and two other children. The victim left the game to use a restroom located in the park. While she was in the process of using the toilet, and had her pants pulled down, a young man entered the restroom.

The man, later identified as defendant, grabbed the victim, pulled her onto the floor and lay on top of her. He pulled his pants down and touched his "private part" to her "private part." The victim testified his penis did not enter her vaginal area.

The victim returned home after she was able to get away. She did not report the incident because defendant had threatened to kill her mother if she told anyone what happened. The victim did, eventually, re-

port the incident to a teacher and the police were contacted. Defendant was identified from a photographic array the police presented to the victim.

Defendant was arrested by Detective Maganza of the St. Louis County Police Department. Before interrogation began, Detective Maganza read the *Miranda*[1] warning to defendant and, after going through each paragraph separately to ensure defendant understood his rights, had defendant sign a *Miranda* waiver form. Defendant made a statement implicating himself in the crime. This statement was witnessed by Detective Maganza and Sergeant Ventimiglia.

Defendant also made a second, tape recorded, statement. The *Miranda* warning was repeated and he was asked if he wished to make a statement. He answered "no" but, after a three to ten second pause, said that he would make a statement. During the pause defendant and the police officers sat and looked at each other, but no questions were asked.

Defendant presented both alibi testimony and a second defense: that the incident could not have occurred in a restroom in Bellefontaine Park because the restroom doors were padlocked from November 1987 until March 1988. The State put on one rebuttal witness, St. Louis County Police Officer Bayes, who testified that Bellefontaine Park was part of his regular patrol during the period in question. While patrolling the park during January and February of 1988 he noticed, on various occasions, that the restroom doors were unlocked and standing open.

Defendant raises three issues on appeal: 1) that the trial court erred in overruling his motion to suppress his confession; 2) that the trial court erred in allowing Officer Bayes to testify as a rebuttal witness; and, 3) that the trial court erred in denying his motion for acquittal at the close of the State's case and in denying his motion for new trial. We affirm.

In his first point, defendant asserts that the trial court erred in failing to suppress his confession because: 1) he was not asked if he wanted to consult with an attorney before, or have an attorney present during interrogation, and 2) the interrogation was not stopped when defendant stated he did not wish to make a statement. Prior to trial, Detective Maganza testified at a suppression hearing that defendant had been advised of his constitutional rights before any questioning began. This testimony was corroborated by Sergeant Ventimiglia. Defendant offered no evidence to contradict this testimony.

The question is whether there was sufficient evidence to sustain the trial court's finding that defendant's statement was voluntarily made. *State v. Stokes*, 710 S.W.2d 424, 428–429 (Mo.App.1986). On appellate review, we are free to disregard contradictory evidence and inferences and affirm the trial court's ruling on a motion to suppress if the evidence is sufficient to sustain its finding. *Id.* at 426. We will not disturb the trial court's ruling absent manifest error. *State v. Allen*, 684 S.W.2d 417, 422 (Mo.App.1984).

▬ If an accused requests counsel, further questioning can be had only if the accused voluntarily, knowingly and intelligently initiates the communication. *State v. Lewis*, 734 S.W.2d 847, 852 (Mo.App. 1987). The test for voluntariness of a confession is whether, in the light of the totality of the circumstances, the defendant was deprived of a free choice to admit, to deny or to refuse to answer, and whether physical or psychological coercion was of such a degree that defendant's will was overborne at the time he confessed. *State v. Lytle*, 715 S.W.2d 910, 915 (Mo. banc 1986).

Defendant was advised of his *Miranda* rights prior to questioning. Detective Maganza testified that he read the *Miranda* form to defendant. It stated:

> Before we ask you any questions you must understand what your rights are:
>
> 1. You do not have to make any statement at this time and have a right to remain silent.

---

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

2. Anything you say can and will be used against you in a court of law.

3. You are entitled to consult with an attorney before any interview and to have an attorney present at the time of interrogation.

4. If you cannot afford an attorney, one will be appointed for you.

Detective Maganza further testified that after each paragraph was read defendant indicated his understanding by repeating it back in his own words. Defendant initialed each paragraph and signed the portion of the form which provided:

I have read the above statement of my rights and I understand what my rights are. I am willing to make a statement and answer questions. I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have been made to me and no pressure or coercion of any kind has been used against me.

■ The State met its burden of showing defendant's statement was voluntarily given, that he was apprised of his right to consult with an attorney and that he understood his rights. *Miranda* does not require the police to educate defendants about the law prior to questioning; it only requires them to advise defendants of their rights to an attorney, whose obligation it is to advise the defendant of the legal consequences of any statement he may make. *State v. Hogan*, 748 S.W.2d 766, 768 (Mo. App.1988). The police here did an admirable job of advising defendant of his rights and assuring they were understood.

■ Defendant was readvised of his rights before he made his recorded statement. After indicating he understood, the following exchange occurred:

*Maganza:* Knowing and understanding these things that I just read to you, do you still wish to make a statement.

*Young:* No, I do not ... I do, well, o.k.,....

The record indicates that after stating "No, I do not" there was a pause of three to ten seconds. The police officers did not say or do anything during this pause. Defendant reinitiated the interrogation by agreeing to make a statement. The "totality of the circumstances" indicate that defendant's confession was voluntary and properly admitted.

Defendant argues, however, that the police stared at him during the pause and, because of his low I.Q., this served to coerce him into making the statement. We disagree. The police had no reason to believe that defendant was unable to understand the situation. They properly informed defendant of his rights and were given adequate assurances that he understood. *See, State v. Hooks*, 748 S.W.2d 742, 744 (Mo.App.1988). Moreover, even if staring is a form of coercion, and we have not been convinced that it is, three to ten seconds would not provide adequate time to coerce someone, even someone with a low I.Q. A person of low intelligence is capable of waiving *Miranda* protections. *State v. Randolph*, 698 S.W.2d 535, 539 (Mo.App. 1985). We, therefore, hold that the trial court did not err in admitting the confession. Point I is denied.

In his second point, defendant asserts that the trial court erred in allowing Officer Robert Bayes to testify as a rebuttal witness. He argues that the State failed to provide defendant with the name of this witness during discovery.

At trial, defendant's objection was that Officer Bayes' testimony was improper rebuttal because it should have been presented during the State's case-in-chief. Defendant has failed to preserve this point for appeal. The point on appeal must be based upon the theory of the objection made at the trial. *State v. Foulk*, 725 S.W.2d 56, 69 (Mo.App.1987). Defendant did, however, raise discovery violation in his motion for new trial. In our discretion, we will review the claim for plain error affecting substantial rights pursuant to Rule 29.12(b).

Plain error review places a heavy burden on the defendant to make a clear showing of manifest injustice. *State v. Hanson*, 735 S.W.2d 100, 101 (Mo.App.1987). Error which does not result in manifest injustice does not constitute plain error. *State v. Tate*, 733 S.W.2d 45, 46 (Mo.App.1987).

■ The scope of rebuttal testimony is generally within the discretion of the trial court and we will reverse only for abuse of that discretion. *State v. Leisure,* 749 S.W.2d 366, 380 (Mo. banc 1988). Where a rebuttal witness is not called to rebut a defense of alibi or mental disease or defect, there is no obligation to disclose the witness. *State v. Curtis,* 544 S.W.2d 580, 582 (Mo. banc 1976). *See also, State v. Williams,* 742 S.W.2d 616, 618 (Mo.App. 1987) and *State v. Burton,* 721 S.W.2d 58, 63 (Mo.App.1986). In any event the matter is of no significance here for the reason that the records of the trial court reveal that Officer Bayes was endorsed as a witness three months prior to trial and defense counsel was duly notified. Defendant should not have been surprised by the testimony. Point II is denied.

Lastly, defendant argues that the evidence presented at trial was insufficient to show defendant attempted to have sexual intercourse with the victim. Defendant was convicted of attempted rape pursuant to § 564.011, RSMo 1986.

In reviewing the sufficiency of the evidence in a criminal conviction, we view the evidence in the light most favorable to the State, giving the State the benefit of all reasonable inferences to be drawn from the evidence and we disregard any contrary evidence and inferences. *State v. Morrison,* 659 S.W.2d 346, 347 (Mo.App.1983). We do not weigh the evidence, rather we determine whether the verdict is supported by sufficient evidence from which reasonable people could have found defendant guilty as charged. *State v. Murphy,* 753 S.W.2d 90, 91 (Mo.App.1988).

■ The attempt statute, § 564.011, RSMo 1986, does not require that an actual and specific attempt be made to perform each and every element of the crime. *State v. Bolen,* 731 S.W.2d 453, 458 (Mo. App.1987). Attempted penetration is not required to convict of attempted rape. *State v. Thomas,* 670 S.W.2d 138, 139–140 (Mo.App.1984). This is true when there is evidence of the defendant's purpose and

when he has taken a substantial step toward its commission. *Id.* at 140.

■ The facts indicate that defendant had the purpose to commit rape and had taken a substantial step toward its commission. Defendant laid down on top of the victim and touched his penis to her vagina. The fact that no penetration occurred is of no import. Defendant took a substantial step toward the commission of rape. The evidence is sufficient to support the conviction under § 564.011 for attempted rape.

■ We feel compelled to address one other point defendant raised both in his brief and during oral argument. Defendant argues that the State failed to show a violation of § 566.030, RSMo 1986 [2] because there was no evidence that defendant attempted to penetrate the female sex organ of the victim with his sex organ.

Section 566.030.3 provides: "A person commits the crime of rape if he has *sexual intercourse* with another person to whom he is not married who is less than fourteen years old." (Emphasis supplied.) "Sexual intercourse" is defined by § 566.010.1(1), RSMo 1986 as "any penetration, however slight, of the *female sex organ by the male sex organ,* whether or not an emission results." (Emphasis supplied.)

Citing *Dorland's Pocket Medical Dictionary,* defendant informs us that the "female sex organ," as that term is used in the statutes relating to rape, is the ovary. Similarly, he advises that the "male sex organ" is a testis. Upon such foundation, he concludes that because a testis cannot penetrate an ovary the crime of rape as defined by Missouri statutes is "impossible" to commit. The argument is, to say the least, specious. The term "sexual organ" includes the external genitalia (the vagina and the penis). *See, Webster's Third New International Dictionary of the English Language,* 2082 (1981) and *Attorneys' Dictionary of Medicine,* S–80 (1976). Defendant's argument on this issue flies in the face of common sense and understanding of the English language. We reject it. Point III is denied.

**2.** As stated, *supra,* defendant was not convicted

of a violation of this statute, but of § 564.011.

The judgment of the trial court is affirmed.

HAMILTON, P.J., and CARL GAERTNER, J., concur.