We reverse and remand for reinstatement of the original judgment.

PARRISH and SHRUM, JJ., concur.

**STATE of Missouri, Plaintiff–
Respondent,**

v.

**Bruce L. WILLIAMS, Defendant–
Appellant.**

No. 24717.

Missouri Court of Appeals,
Southern District,
Division Two.

Nov. 26, 2003.

Amy M. Bartholow, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Adriane Dixon Crouse, Asst. Atty. Gen., Jefferson City, for respondent.

NANCY STEFFEN RAHMEYER, Chief Judge.

Bruce L. Williams ("Appellant") was charged by information with felony criminal nonsupport, pursuant to § 568.040.[1] He was convicted at the conclusion of a jury trial, and the trial court subsequently sentenced him to forty-five days incarceration in the Laclede County Jail, as well as a $5000 fine. Appellant now brings this appeal, challenging his conviction on the grounds that the trial court erred in excluding evidence, in allowing improper argument, and plainly erred "in sentencing him for felony criminal nonsupport." The State candidly and correctly concedes the essence of Appellant's third point, i.e., that the State did not prove him guilty of felony criminal nonsupport because the three-year statute of limitations should have been applied and when the barred portion is excluded, the minimum $5000 per child arrearage amount required for a felony nonsupport charge was unproven.[2] How-

---

1. All references to statutes are to RSMo 2000, unless otherwise indicated.

2. An essential element of a felony nonsupport crime per § 568.040 is an arrearage amount of $5000 *per child,* rather than an aggregate amount of $5000 reached by combining the arrears for all children. Appellant argues, that since he cannot be in arrears more than $7200 for his two children, the most the State can prove is that he is $3600 in arrears per child.

ever, the State disagrees with Appellant as to the remedy that should be granted. The State argues that a conviction for misdemeanor should be entered its stead.[3] We need not, however, decide if a belated sentencing of Appellant for a misdemeanor offense is a viable remedy. This follows because we find Appellant is entitled to a new trial on the basis of Appellant's first two points on appeal.

Appellant and Dianna Williams ("Williams") were divorced on November 16, 1987. During their marriage, Appellant and Williams had two children together and, upon the dissolution of the marriage, Appellant was ordered by the divorce decree to pay support for the children. Specifically, the decree instructed Appellant to pay monthly child support to the circuit clerk of Laclede County, beginning December 1, 1987, in the amount of $100 per child.

As early as December of 1987, Williams began to receive State aid in the amount of $431 per month because Appellant was not making regular payments to the Laclede County clerk's office. Subsequently, on January 2, 2002, the State charged Appellant with felony nonsupport for the period between December 1, 1987 and November 28, 2000, alleging that "the total amount of the support which [Appellant] knowingly failed to provide was in excess of five thousand dollars." According to the Division of Child Support Enforcement ("Child Support Enforcement"), which was responsible for maintaining Appellant's payment

history, Appellant paid a total of only $3333.23 between December 1, 1987 and November 28, 2000, which put him $27,066.77 in total arrears.[4]

At trial, Appellant's defense was that he had been paying cash directly to Williams in lieu of remitting child support to the clerk's office and, thus, he was not guilty of nonsupport, felony or otherwise. He further asserted that, by accepting both child support from him and aid from the State, Williams had been committing welfare fraud. To bolster his defense, in August of 2001, Appellant tape-recorded a conversation between Williams and himself in which Williams acknowledged that Appellant had not only paid support directly to her, but that he had paid more than he actually owed. While Appellant told defense counsel about the existence of the tape a few days before trial, he was unable to locate the tape before trial began, and was able to produce it only after the defense had rested its case.[5] At that time, defense counsel asked to reopen its case or, in the alternative, to present surrebuttal evidence in order to impeach Williams' trial testimony. The prosecutor objected on the ground that the tape-recording had not been timely disclosed, and the trial court sustained the State's objection and excluded the evidence.

Subsequently, during closing arguments, the State attempted to discredit Appellant's proffered defense by arguing that Appellant was unable "to produce one shred of evidence" to prove Williams com-

---

3. To prove the class A misdemeanor crime of nonsupport, the State must establish only that the Appellant "knowingly fail[ed] to provide, without good cause, adequate support which such parent is legally obligated to provide for his child." RSMo §§ 568.040.1, .4.

4. According to Child Support Enforcement, Appellant's first payment was made through a tax interception in the amount of $44.54 in

May of 1989, while his first voluntary payment ($203.08) was made in August of 1989.

5. According to Appellant, he was unable to produce the tape before trial because his ex-girlfriend, Tammy, had stolen it. Appellant further explained that Tammy's father ultimately succeeded in retrieving the tape from her, but not until the defense had rested its case and the trial was drawing to a close.

mitted welfare fraud. At the conclusion of his trial, Appellant was convicted of felony nonsupport and sentenced accordingly. Appellant now brings three points on appeal.

■ In his first point on appeal, Appellant contends that the trial court abused its discretion by excluding the tape-recording as a sanction for Appellant's failure to disclose the tape to the State prior to trial.[6] He now argues that, because the tape-recorded conversation tended to incriminate Williams while exculpating himself, its exclusion at trial effectively denied him of due process and resulted in fundamental unfairness. Because we agree that the exclusion of the tape-recording substantively altered the outcome of Appellant's case, we reverse and remand for a new trial.

Pursuant to Rule 25.16,[7] trial courts are given considerable discretion in determining whether a party should be sanctioned for a discovery violation and, if so, what type of sanction should be imposed. *See State v. Simonton*, 49 S.W.3d 766, 780 (Mo.App. W.D.2001). Additionally, trial courts are vested with discretion to determine whether a defendant should be permitted to reopen his case to present additional evidence, *State v. Hunt*, 461 S.W.2d 879, 881 (Mo. banc 1971), and to determine the scope of evidence that may be presented on rebuttal. *State v. Young*, 781 S.W.2d 212, 216 (Mo.App. E.D.1989) (citing *State v. Leisure*, 749 S.W.2d 366, 380 (Mo. banc 1988)). Thus, we review the trial court's exclusion of the tape-recording un-

der an abuse of discretion of standard. *State v. Allen*, 81 S.W.3d 227, 229 (Mo. App. W.D.2002); *see also Hunt*, 461 S.W.2d at 881. An abuse of discretion occurs when the ruling or decision of the trial court results in fundamental unfairness to the defendant. *State v. Willis*, 2 S.W.3d 801, 806 (Mo.App. W.D.1999) (citing *State v. Perkins*, 710 S.W.2d 889, 894 (Mo.App. E.D.1986)).[8]

■ Initially, we note that there is generally no obligation to disclose rebuttal testimony under Missouri law. *See State v. Young*, 781 S.W.2d 212, 216 (Mo.App. E.D.1989); *see also State v. Curtis*, 544 S.W.2d 580, 582 (Mo. banc 1976) (noting that there is no obligation to disclose rebuttal witnesses unless the evidence is introduced to rebut a defense of alibi or mental disease or defect); *State v. Williams*, 742 S.W.2d 616, 618 (Mo.App. W.D.1987). This rule has also been extended to physical evidence offered in rebuttal. *State v. Clark*, 975 S.W.2d 256, 263 (Mo.App. S.D.1998).

In the present case, the evidence that Appellant attempted to introduce was a tape-recording that preserved the following exchange between Appellant and Williams:

> [Appellant]: I—I don't want to be put on probation or go to jail for—for something I—I'm not guilty of.
>
> [Williams]: I understand that. I understand that. Do you want me to go in there and—see, if I go in there and I tell them—

---

6. Appellant claims that he was unable to disclose the tape to the State prior to trial because it had been taken from his possession only to be returned after the defense had rested its case. *See supra* note 5.

7. All rule references are to Supreme Court Rules (2002), unless otherwise stated.

8. *See also Nelson v. Waxman*, 9 S.W.3d 601, 604 (Mo. banc 2000) ("An abuse of discretion occurs when a trial court's ruling is clearly against the logic of the circumstances then before the trial court and is so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful, deliberate consideration.").

[Appellant]: That I paid you what I paid you.

[Williams]: —"Hey, [Appellant] has handed me $27,000"—if I do that, [Appellant], they're going to get me for fraud. Do you know what that means?

[Appellant]: I—I—

[Williams]: No, do you know what that means? Do you not give a shit about me at all? Twenty-seven thousand dollars, [Appellant]. I'm willing to go out here and help pay the son of a bitch off, but instead, you want me to just go up there and say, "Hey, yeah. I've been fraudulent to you guys for the last seventeen years." I can't do that, [Appellant]. I will go to the pen . . .

. . . .

[Appellant]: I'm the one that—I've paid—that—that bill—that $200 a month on [the children]—I really don't owe a penny on that, do I? Do you think I owe a penny on that $200 a month on [the children]? Do I owe a penny on that?

[Williams]: Mmm.

[Appellant]: What?

[Williams]: I can't say yes and I can't say no.

[Appellant]: Why not? You don't think I've averaged $200 a month?

[Williams]: Averaging out, yeah. Averaging it out—okay. Actually, you know what? In the last five years—

[Appellant]: The five year? How about ten—

[Williams]: No, please—wait a minute.

[Appellant]: How about—what do you mean, five years? The last twelve or thirteen years.

[Williams]: Actually, in the last five years you've probably done more than $27,000—in just the last five years. See what I'm saying?

[Appellant]: No, I haven't given you that much.

[Williams]: No. No, no. But what I'm saying, just the—the $10 here, the hundred here, the school—fifty, hundred, 500, 800 here—the school—

. . . .

[Williams]: What I'm saying—yeah. What I'm saying—yes, but the problem—see, the problem is—is that woman said if I go in there and I admit to one penny—she said she don't give a damn if it's a penny—one penny, I'm fraud. I'm fraud. And you know I'm not. And I know you don't owe that either, so I don't really know what to do.

Considering that Williams testified that Appellant owed in excess of $5000 in back child-support payments, and twice denied ever telling Appellant that he had paid in excess of $35,000, the tape-recording would certainly have rebutted, or at least impeached, her trial testimony. Thus, because the tape-recording was offered only for the purpose of rebutting Williams' testimony, Appellant did not violate the disclosure requirements of Rule 25.03 by failing to disclose the evidence to the State prior to trial.

▪ As indicated above, the trial court retains considerable discretion in both determining the proper scope of rebuttal evidence, *Young*, 781 S.W.2d at 216, and levying sanctions for discovery violations. *Simonton*, 49 S.W.3d at 780. Under either theory, however, the trial court's decision to exclude the tape-recording constituted an abuse of discretion because the exclusion resulted in fundamental unfairness to the defendant. *Willis*, 2 S.W.3d at 806 (citing *Perkins*, 710 S.W.2d at 894).

▪ Even if Appellant violated Rule 25.03 by failing to disclose the tape-record-

ing prior to trial,[9] by deciding to exclude the evidence altogether, the trial court selected a drastic remedy that, in essence, prevented Appellant from offering his defense to the charged offense. As the Missouri Supreme Court noted in *State v. Mansfield,* 637 S.W.2d 699 (Mo. banc 1982):

> The remedy of disallowing the relevant and material testimony of a defense witness essentially deprives the defendant of his right to call witnesses in his defense. This is not to say it should never be done, but it is certainly a drastic remedy that should be used with the utmost caution.

*Id.* at 703; *see also State v. Allen,* 800 S.W.2d 82, 86 (Mo.App. W.D.1990) (noting that one of the fundamental rights of due process is the right of a criminal defendant to present witnesses and evidence in his own behalf).

The State's case against Appellant can basically be distilled into two components: (1) evidence from Child Support Enforcement that Appellant had failed to make child-support payments directly to the Laclede County Clerk, resulting in arrearages in the amount of $27,066.77, and (2) Williams' testimony that Appellant had not made the support payments directly to her and that he owed more than $5000 in arrears. In his defense, Appellant asserted that he had paid child support directly to Williams, and that she, in turn, had committed welfare fraud by accepting State benefits in addition to Appellant's payments. The best evidence that Appellant could offer to the jury in support of his proffered defense was the tape-recorded conversation during which Williams

contradicted the testimony that she gave at trial. Without the tape-recording, the jury was left only with Appellant's bare, unsubstantiated assertion that he had paid the ordered child support to Williams and that she had committed welfare fraud.

■ Under these circumstances, we cannot say that the jury would have returned a conviction for felony nonsupport, had it been privy to the tape-recording which corroborated Appellant's testimony. The prejudice that Appellant suffered by the exclusion of the tape-recording is further compounded by portions of the State's closing argument in which the prosecutor stated that Appellant had been unable to produce any evidence of Williams' commission of welfare fraud, and intimated that no such evidence existed. We address these statements, which form the basis for Appellant's second point on appeal, because they further illustrate and support our finding that Appellant's trial was fundamentally unfair.

Although the prosecutor knew that Appellant had attempted to introduce evidence in the form of the tape-recording that Williams had received child support, only to have it excluded at his own instigation, the prosecutor nonetheless stated in closing that:

> [F]or all of the talk about welfare fraud, they were not able to produce one shred of evidence to show a receipt that was improperly credited. Not one receipt in a month where [Williams] got the money in addition to a payment from the State of Missouri. Not one ... Now they want to say [Williams] has a motive to be untruthful. There's no evidence of that. ***Again, there's not one piece of***

---

**9.** Because we determine that the tape-recording was in the nature of rebuttal evidence, we do not find that Appellant's failure to disclose was a discovery violation. Of course, on retrial, the trial court may determine whether

the tape is inadmissible on any other ground. We do not address those issues in this opinion as the basis of the State's objection and the trial court's exclusion was solely as a sanction for failure to properly disclose the tape.

*evidence that shows that the mother in this case, the victim, double dipped, received money from [Appellant] and AFDC money in the same month.* (emphasis added).

■ Missouri law is well-settled that a prosecutor commits error by "comment[ing] on or refer[ing] to evidence or testimony that the court has excluded." *State v. Weiss,* 24 S.W.3d 198, 202 (Mo. App. W.D.2000) (quoting *State v. Hammonds,* 651 S.W.2d 537, 539 (Mo.App. E.D. 1983)). For example, in *State v. Weiss,* 24 S.W.3d 198 (Mo.App. W.D.2000) the defendant, John Weiss, was charged with stealing money from a bank account that belonged to another man of the same name. *Id.* at 199. In defense of his actions, the defendant claimed that, at the time he withdrew the money, he believed he was accessing funds he had received in a "buyout" from a former employer. *Id.* In support of his proffered defense, he attempted to introduce documentation proving that he had received "buy-out" money upon his retirement. *Id.* at 200. The prosecutor objected to the admission of the documents on the grounds that they constituted inadmissible hearsay and were disclosed to the State in an untimely manner, and the trial court sustained the objections and excluded the documents. *Id.* at 200–01. Subsequently, during closing statements, the prosecutor argued that "[t]he defense has actually shown you not one single record, no payroll record, nothing to show that this other money even ever existed. Maybe it didn't." *Id.* at 202. Because the prosecutor knew that his own hearsay objection had thwarted the defendant's attempt to introduce that type of documentation, the Court found that his comments were "positive misrepresentations to the

jury that the documents showing Defendant Weiss received buy-out money did not exist." *Id.* at 203. The Court then reversed and remanded for a new trial, stating that, because it could not "say that this distasteful tactic did not affect the verdict," the prosecutor's purposeful misconduct affected the defendant's substantial rights and resulted in manifest injustice. *Id.* at 204.

Similarly, in *State v. Luleff,* 729 S.W.2d 530 (Mo.App. E.D.1987), the defendant was charged with receiving stolen property. *Id.* at 532. At trial, he attempted to introduce into evidence a receipt for the sale of the item he had allegedly stolen, only to have the prosecutor successfully object to the document on the grounds that it constituted hearsay.[10] *Id.* at 535. Subsequently, during closing arguments, the prosecutor repeatedly asked the jury to consider why the defendant had failed to produce a receipt at trial, thereby representing that, had such document actually existed, the defendant would have produced it and entered it into evidence. *Id.* at 536. The Court found that, under those circumstances, the prosecutor's "comments were tantamount to an absolute denial of the existence of any such document." *Id.* Furthermore, considering that the prosecutor knew first-hand that the defendant had attempted to introduce a document that he claimed to be a receipt, the Court found that "[t]he remarks were not accidental, but were deliberate." *Id.* Consequently, after noting that "[t]he error affected defendant's substantial rights and resulted in manifest injustice," the Court reversed defendant's conviction and remanded for a new trial. *Id.*

Finally, in *State v. Hammonds,* 651 S.W.2d 537 (Mo.App. E.D.1983), the defen-

---

**10.** The defendant then tried to have the receipt introduced under *the* business records exception to the hearsay rule, but the prose-cutor again objected, and the trial court again sustained the objection. *Id.*

dant, who had been charged with robbery, claimed that he had been at his uncle's house at the time of the robbery, and subsequently tried to list his uncle as an alibi witness on the morning of trial. *Id.* at 538. The prosecutor objected on the ground that the defendant had failed to timely disclose the witness, and the trial court sustained the State's objection and excluded the proffered witness. *Id.* During closing arguments, the prosecutor commented on the fact that the uncle, though present in the courtroom, did not testify to provide an alibi for the defendant, and he suggested that this was because the uncle did not want to perjure himself. *Id.* at 538–39. Because the uncle's testimony had been excluded at the prosecutor's insistence, the Court found that the prosecutor had "intentionally misrepresented the facts," and that the misrepresentation "was not accidental, but was deliberate, and cannot be excused." *Id.* The defendant's conviction was therefore reversed and the case remanded for a new trial.

Here, in much the same way as in *Weiss, Luleff,* and *Hammonds,* the prosecutor made positive misrepresentations to the jury that there was no evidence to support Appellant's assertion that Williams had been committing welfare fraud by simultaneously collecting aid from the State and support payments from him. As in *Hammonds,* the prosecutor's comments during closing arguments were deliberate and inexcusable. *See Hammonds,* 651 S.W.2d at 539. While he was well aware that Appellant had, indeed, attempted to introduce evidence of Williams' welfare fraud, the prosecutor's "comments were tantamount to an absolute denial of the existence of any such [evidence]." *Luleff,* 729 S.W.2d at 536. Under these circumstances, especially when coupled with the trial court's erroneous exclusion of the tape-recording on the basis of a discovery sanction, the prosecutor's purposeful misconduct affected Appellant's substantial rights and resulted in manifest injustice. Consequently, Appellant's conviction must be reversed and his case remanded for a new trial.

The trial court's judgment is thus reversed, and Appellant's cause is remanded for a new trial.

PARRISH, J., and SHRUM, J., concur.