**Terressa CUMMINGS, Movant–Appellant,**

v.

**STATE of Missouri, Respondent–Respondent.**

**No. 27232.**

Missouri Court of Appeals,
Southern District,
Division One.

June 21, 2006.

---

5. All rule references are to Missouri Court Rules (2006), unless otherwise specified.

Mark A. Grothoff, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Shaun J. Mackelprang, Asst. Atty. Gen., Jefferson City, for Respondent.

NANCY STEFFEN RAHMEYER, Presiding Judge.

Terressa Cummings ("Movant") claims trial court error in denying her Rule 29.15 motion for post-conviction relief.[1] We affirm.

Only the facts necessary for the issues in this appeal will be set forth; however, for a more intensive review of the facts, see *State v. Cummings*, 134 S.W.3d 94, 96 (Mo.App. S.D.2004). In an abbreviated account, Movant was convicted of murder in the first degree in the murder of Melissa Rose Saggert Boviall ("Victim"). Her co-defendant, Ronnie Johnson ("Johnson"), pled guilty to kidnapping and felony murder of Victim prior to Movant's trial. Johnson's plea agreement required him to testify against Movant. At trial, Johnson and Movant each claimed the other killed Victim.

---

1. All rule references are to Missouri Court Rules (2006), unless otherwise specified.

■ In her first point, Movant claims her trial counsel was ineffective for failing to introduce evidence that Movant had reported to the police an assault and threats made against her forty-eight hours before the murder by Johnson. She claims the evidence would have been relevant to establish her state of mind, her claimed fear of Johnson, and her failure to intervene in Johnson's assault against Victim as well as her delay in reporting Victim's death. The State counters with the testimony of Movant's counsel that he did not seek the admittance of the reported assault and threats made by Johnson because he did not think it was relevant or admissible.

■ Movant claimed during the initial trial that she was afraid of Johnson and, therefore, she did not try to stop the assault or promptly report the murder. She now posits the admission of the police report would have substantiated this claim and was relevant to her state of mind. With the standard of review clear, that we review the denial of a Rule 29.15 motion to determine whether the findings of fact and conclusions of law of the motion court are clearly erroneous, we find no error. *See Moss v. State,* 10 S.W.3d 508, 511 (Mo. banc 2000) ("Appellate review of the denial of a post-conviction motion is limited to a determination of whether the findings of fact and conclusions of law of the motion court are clearly erroneous.").

The trial court noted the broad discretion which trial counsel enjoys for trial strategy and stated:

[Movant's counsel] had attempted to establish through Movant's testimony that she took [n]o action to prevent the homicide or report the homicide because of her fear of Mr. Johnson. Movant's testimony was that she had just witnessed Mr. Johnson kill [Victim] and that she was in fear for her life. An alleged assault that transpired two days earlier would likely have no impact on the jury in light of Movant's testimony that less than twenty-four hours after the alleged assault she was partying with Mr. Johnson and [Victim].

Additionally, evidence was adduced at trial of the "considerable animosity" between Victim and Movant, the admitted assault on Victim by Movant the night before the murder, and Movant's jealousy of Victim. *Cummings,* 134 S.W.3d at 97–98. Although Movant contended that Victim was forced into the car by Johnson on the outing on the day of the murder, there was evidence that the "kidnapped" Victim "flirted" with someone while she was in the car after the alleged kidnapping. *Id.* at 98. Furthermore, after the murder, Movant and Johnson went to the home of friends where Movant and Johnson sat close together, holding hands and kissing. *Id.* at 99. Later, both ate supper at the home of Victim's husband and Movant washed the clothes she and Johnson had been wearing at the site of the murder. *Id.* at 99. A few days later, Movant went to her former husband's home to get marijuana without Johnson. *Id.* at 100. Movant then went to her former husband's home to stay with him after Johnson kicked her out. *Id.*

The police report may have contradicted Movant's trial theory of Johnson's motive for killing Victim, that Johnson loved Movant more than anything in the world and would do anything for Movant. Moreover, Movant's ex-husband, Otis Cummings, testified that Johnson came to Cummings' home, beat on the side of the house and yelled for Movant to come out. Movant told Johnson that she would not go with him, that she was going to stay with Cummings. As a result of threats made by Johnson, Movant then went to the FBI and the Joplin Police Department. The court could have found it to be reasonable

trial strategy not to highlight the fact that Movant was capable of filing a police report and was willing to file one against Johnson because she had done so within the previous week.

All of these facts support the trial court's finding that a police report concerning an alleged assault two days prior to the murder likely would have no impact on the jury. The additional evidence that Movant had actually filed a police report complaining about Johnson's abusive behavior prior to the murder had the potential to harm Movant's claim that she was so afraid of Johnson that she simply acquiesced to Johnson's murder of Victim and delayed in reporting the murder. Without even addressing whether the police report would have been admissible, we find there was no reasonable probability the results of the proceeding would have been different but for the alleged failure of trial counsel to offer the police report. Point I is denied.

■ In her second point, Movant claims her counsel was ineffective for failing to object and request a mistrial when the State cross-examined Movant about letters, which had been ruled inadmissible by the trial court, she had written to Johnson during their incarceration wherein Movant professed her love for Johnson. At trial, immediately prior to the cross-examination of Movant, the State announced to the court that it had received twenty letters written by Movant to Johnson while they were incarcerated and it intended to utilize those letters during the cross-examination of Movant. The State indicated that it had just asked for and received the letters from Johnson's attorney and had not yet disclosed them to the defense. Movant claims she was prejudiced because the State used the letters to create an implication that Movant was manipulating Johnson into not testifying against her.

The court sustained the objection by Movant's counsel to the use of the letters, except the one that had been disclosed, and agreed that the State should not flash the stack of letters in front of the jury. The State did not introduce the letters nor flash a stack of letters in front of the jury; however, Movant complains that testimony was solicited during the cross-examination that Movant had in fact sent a number of letters to Johnson professing her love to him. Defense counsel made no objections to the testimony.

The questions and answers about which Movant complains are:

[State]. And you told [Johnson] that you loved him in a number of letters you wrote to him while he was in custody; isn't that true?

[Movant]. It's true that I probably said that in every letter I wrote him.

[State]. And within a two month period of time, since the date of your incarceration, you wrote him approximately twenty letters; isn't that true?

[Movant]. Two month period, no.

[State]. Eighteen letter[s]?

[Movant]. The question of how many letters isn't the issue. The period of time—it's not—it wasn't two months.

[State]. All right. How many letters did you write him?

[Movant]. I don't know the exact number.

[State]. You wrote him more than twenty letters; is that true?

[Movant]. If I said yes, and it's not as many as I said then that would be lying and that's not what I'm here to do.

[State]. Well, isn't it true that you wrote him a letter approximately every other day for approximately thirty days?

[Movant]. Probably twenty something days; I could have.

[State]. And in those letters, while you were in custody; didn't you continue to share with him your love?

[Movant]. Like I said, I probably said I love you in every letter I wrote him.

[State]. And didn't you also refer to him as your husband in those letters.

[Movant]. Yes, I did.

[State]. You wanted him to know that you were considering yourself his wife?

[Movant]. As he considered that too, yes.

Citing to *State v. Williams*, 119 S.W.3d 674, 680 (Mo.App. S.D.2003), Movant claims, "it is considered error for a prosecutor to refer to evidence that the court has excluded." *Williams* is not controlling. As the trial court aptly stated:

In this case the Court excluded the admission of the actual letters because of late disclosure of the letters to the Movant by the State. However it is clear from the discussion of the attorneys and the Court that everybody anticipated questions concerning the letters would be asked of Movant because Ron Johnson had already testified ab[o]ut the letters he had received from Movant. The only thing that Movant was asked about during the cross-examination was the number of letters, the time period of the letters, and Movant's expression of love for Ron Johnson. These questions take up about two pages of a transcript where the trial testimony runs for 824 pages. The Court finds that the questions were not objectionable but even if they were there would [not] have been any difference in the outcome of the trial if the questions and answers had not been admitted.

(internal citations omitted).

The court's observations that everybody anticipated questions concerning the letters are supported by the statement of Movant's counsel:

I think [the State] can refer to the fact that there are letters but I'm going to ask that [the State] not flash them in front of the jury. I would ask that all the letters not previously disclosed prior to right now, not be allowed to be used or flashed to the jury or to the witness. I don't think there's anything wrong with [the State] mentioning letters written because there's already been such testimony.

Additionally, Movant is not complaining about her own testimony in which she admitted that she told Johnson she remained in love with him despite the murder she had witnessed. Johnson had also testified that Movant had written him numerous letters. In fact, Johnson testified that he had written a letter to Movant and told her to invoke the Fifth Amendment and require the State to prove its case and that neither had testified against the other at a preliminary hearing. There was no issue regarding the close relationship of Movant and Johnson for a long period of time after the murder. We find no fault with the State's questions concerning Movant's professions of love for Johnson in letters to him. It was a reasonable trial strategy to not draw any further attention to letters written by Movant professing her love for Johnson even after the murder by objecting to the State's questions. Point II is denied.

The judgment is affirmed.

PARRISH and LYNCH, JJ., concur.