STATE of Missouri, Respondent,

v.

Antwon D. NELSON, Appellant.

Antwon D. NELSON, Movant–Appellant,

v.

STATE of Missouri, Respondent.

Nos. 68942, 71449.

Missouri Court of Appeals,
Eastern District,
Division Three.

Sept. 9, 1997.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 24, 1997.

Application for Transfer Denied Jan. 27, 1998.

---

Susan L. Hogan, Appellate Defender, Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Gregory L. Barnes, Asst. Atty. Gen., Jefferson City, for respondent.

CRANDALL, Judge.

Defendant, Antwon D. Nelson, appeals from the judgment of convictions, following a jury trial, of murder in the first degree, assault in the first degree, two counts of robbery in the first degree, and two counts of armed criminal action. He was sentenced to consecutive terms of life imprisonment without the possibility of parole for the murder conviction and to life imprisonment for each of the other convictions. He also appeals from the denial of his Rule 29.15 motion without an evidentiary hearing. We reverse defendant's judgment of conviction of murder in the first degree only and remand the cause for a new trial; the judgment on the remaining convictions is affirmed. The judgment of the trial court denying defendant's Rule 29.15 motion is affirmed.

Defendant does not challenge the sufficiency of the evidence. Viewed in the light most favorable to the verdicts, the evidence established that on December 3, 1992, defendant was 19 years of age; and the victims, Demetrius Butler and David Johnson, were 14 years of age. The victims, who lived in East St. Louis, Illinois, decided to skip school that day. They went to a friend's house. Demetrius telephoned defendant and defendant picked him up in his car for the purpose of buying marijuana. When they returned, defendant left and the victims smoked the marijuana. The victims then left the friend's house and proceeded to walk downtown. As they were walking, defendant pulled up next to them in his car. About five or six men got out; and, wielding guns, forced the victims into the car.

Defendant drove the victims around and eventually took them to a vacant building in the City of St. Louis, Missouri. Defendant and his associates made the victims lie on the floor. They took David's shoes, hat, jacket, and jewelry; and Demetrius' coat, shoes, money, and crack cocaine. They beat and kicked the victims. They then gagged them and forced them into the trunk of defendant's car. Defendant drove around again and finally took them to a park in the City of St. Louis. There, defendant and Arlandus Keyes ordered the victims to walk down a hill and to lie on the ground next to a tree, face down. Arlandus Keyes straddled Demetrius and fired one shot into his head. At Arlandus Keyes' direction, defendant began stabbing David; but David fought back. When the knife broke on the tree, Arlandus Keyes hit David on the head with a gun at which point David fell to the ground. While David was on the ground, defendant stabbed him again in the neck with the broken knife. Defendant and Arlandus Keyes left. Demetrius died as a result of the gunshot wound to his head. Although David sustained cuts and bruises, he survived.

Defendant testified at trial. He stated that the victims voluntarily accompanied him and a friend to the Keyes' residence in St. Louis. There, Arlandus Keyes and his brother drew weapons on the victims, forced

the victims to lie on the floor, took their property, and beat and kicked them. At Arlandus Keyes' direction, defendant got a knife from the kitchen. He then helped to get the victims into the trunk of his car and drove them around. When he let them out at the park, he was not aware that Arlandus Keyes intended to kill them. He walked with Arlandus Keyes and the victims into the park. After Arlandus Keyes shot Demetrius, he told defendant to "cut" David. Defendant stabbed David several times with the kitchen knife.

In his first point, defendant contends the trial court erred in overruling his objection to the State's improper closing argument regarding a statement he made to police that he did not know Arlandus Keyes intended to kill Demetrius. He asserts that he was prejudiced by the trial court's permitting the prosecutor "to argue facts not in evidence and to testify as an unsworn witness."

During opening statement, defense counsel stated that the victims willingly accompanied defendant to St. Louis. The prosecutor objected and a discussion was held outside the hearing of the jury. The grounds for the prosecutor's objection was that defense counsel had not indicated that he was going to call any witnesses to elicit that information, that the statement defendant gave to the police was not admissible, and that the evidence was not going to come in because defendant did not plan to testify. The trial court sustained the objection. After defense counsel held a conference with defendant, he resumed his opening statement and told the jury that defendant would testify. He told them that defendant was ready to take responsibility for his actions, but did not know that Arlandus Keyes was going to kill anyone.

During closing argument, defense counsel again told the jury that defendant accepted responsibility, but that he did not know that Demetrius would be killed. During rebuttal, the prosecutor made the following remarks:

> I submit to you [defendant] is sorry for no one except himself. He took this stand here. And he says he took the stand and this is the door that he's opened, and I am going to walk right through it with you.

He took the stand here because he wanted you to hear what he had to say.... That's not why he took the stand. He took the stand because of the bologna statement he gave to the police, not under any kind of test of truth, cross-examination process. The bologna statement he gave to the police wasn't coming in.... So if he was going to tell, if he was going to get it in—

At that point, defense counsel objected, saying in part, "This is getting into legal rulings and trial strategy.... And clearly I think out of bounds of arguing the evidence in the case...." The prosecutor countered that the argument was proper retaliation for defense counsel's "plaster saint approach to my guy always accepted responsibility" and that defense counsel had opened the door. The court overruled defendant's objection and the prosecutor then continued:

> He was hoping the bologna version he gave to the police would get in. But it didn't. And that's why—do you remember the little break we took during opening statement of defense counsel? That's when he came, his responsibility came out, because it wasn't going to come in if he didn't tell you. It was, you know, there was going to be no evidence....

▮ A prosecutor's arguing facts outside the record is improper and highly prejudicial. *State v. Storey,* 901 S.W.2d 886, 900 (Mo. banc 1995). Assertions of fact not proven amount to unsworn testimony by the prosecutor. *Id.* at 901. "Efforts to inflame the passions and prejudices of the jury by reference to facts outside the record are condemned by ABA standards and constitute unprofessional conduct. The prosecutor may prosecute with vigor and strike blows but he is not at liberty to strike foul ones." *State v. Burnfin,* 771 S.W.2d 908, 912 (Mo.App.1989). Here, neither the statement nor the fact that defendant made the statement to police was in evidence. Yet, during closing argument, the prosecutor told the jury that defendant had made a statement to the police and that the statement "wasn't coming in." Thus, the prosecutor argued facts outside the record.

In addition, the prosecutor's argument was a clear reference to a statement made by

defendant which was not admitted into evidence at the State's request. In *State v. Price,* 541 S.W.2d 777, 778 (Mo.App.1976), this court reversed the defendant's conviction because the State commented during closing argument on the defendant's failure to call alibi witnesses who had been excluded at the request of the State. *See also State v. Hammonds,* 651 S.W.2d 537 (Mo.App.1983). Any comment on defendant's statement fell within the rule which prohibits comment on excluded testimony and was improper.

The prosecutor also reminded the jury that the court had declared a recess during defense counsel's opening statement to consider whether defendant's statement should be admitted into evidence. Matters heard outside the hearing of the jury are done so for a reason. For the prosecutor to refer to such a hearing is more egregious, given his opposition to the admission of defendant's statement.

■ The prosecutor's closing argument concerning defendant's statement to the police was improper. It was prejudicial because it focused on and denigrated the sole defense to the charge of murder in the first degree. The trial court's permitting the prosecutor to make such an argument, over defendant's objection, constituted reversible error. Defendant's first point is granted.

We address defendant's second point because it could occur on retrial. Defendant claims error in the trial court's submission of Instruction No. 7, the verdict director for murder in the first degree, because it did not require the jury to find that defendant deliberated. The challenged instruction provided in relevant part:

### INSTRUCTION NO. 7

■ As to Count I, if you find and believe from the evidence beyond a reasonable doubt:

First, that on December 3, 1992, in the City of St. Louis, State of Missouri, defendant or Arlandus Keyes caused the death of Demetrius Butler by shooting and/or stabbing him, and

Second, that defendant or Arlandus Keyes was aware that his conduct was practically certain to cause the death of Demetrius Butler, and

Third, that defendant or Arlandus Keyes did so after deliberation, which means cool reflection upon the matter for any length of time no matter how brief,

then you are instructed that the offense of murder in the first degree has occurred, and if you further find and believe from the evidence beyond a reasonable doubt:

Fourth, that with the purpose of promoting or furthering the death of Demetrius Butler, the defendant acted together with or aided or encouraged Arlandus Keyes in causing the death of Demetrius Butler, and did so after deliberation, which means cool reflection upon the matter for any length of time no matter how brief,

then you will find the defendant guilty under Count I of murder in the first degree....

At trial, defendant did not dispute that Arlandus Keyes shot and killed Demetrius or that defendant was aware that his conduct was practically certain to cause the death of Demetrius. His defense was that he did not know that Arlandus Keyes intended to kill Demetrius and thus he did not deliberate, a requisite element of murder in the first degree. On appeal, he challenges the verdict director on the basis that it did not ascribe deliberation to him, thereby relieving the State of its burden to prove that he possessed the required mental state.

The verdict directing instruction was patterned on MAI–CR 3d 304.04, the pattern instruction for attributing the responsibility for the conduct of another to defendant, and was modified by MAI–CR 3d 313.02, the pattern instruction for first degree murder. With regard to using MAI–CR 3d 304.04 to submit murder in the first degree, MAI–CR 3d 304.04, Notes on Use 8(b), in effect at the time of trial, addresses a special problem that can arise because the accessory must have *both* the purpose to aid the commission of the offense and whatever culpable mental state is required for the offense. Notes on Use 8(b) reads in pertinent part:

One cannot have the purpose to promote murder by aiding another person unless

one knows the other person intends to kill and thus the accessory will have the intent to kill. Murder in the first degree requires "deliberation"—a mental state not found in any other crime. It is possible for the accessory to have the purpose to promote a murder by aiding another person without necessarily have "deliberated." To make it clear that to be guilty of murder in the first degree the defendant must have deliberated, the verdict director must require a finding of that element.

The ordinary verdict director for murder in the first degree (MAI–CR 3d 313.02) provides for this in the third paragraph which states

> Third, that defendant did so after deliberation, which means cool reflection upon the matter for any length of time no matter how brief,

If in using MAI–CR 3d 304.04 this element is ascribed to the defendant alone or to the defendant *and* the other person or persons, the requirement of finding that the defendant "deliberated" is satisfied. If, however, this element is not ascribed to the defendant but is ascribed solely to another person (as would be the case where the defendant did not perform any other conduct which caused the death and the defendant's liability is based solely on his aiding the person who caused the death), then it is suggested that the ascription of that mental state to the defendant should be accomplished by modifying the paragraph following "then you are instructed that the offense of [*name of offense*] has occurred ..." to read as follows:

> (Second)(Third) ( [*next numbered paragraph* ] ), that with the purpose of promoting or furthering the death of [*name of victim* ], the defendant aided or encouraged [*name(s) of other person(s) involved* ... ] in causing the death of [*name of victim* ] and reflected upon this matter coolly and fully, ...

Here, Paragraph Third of the verdict director required that the jury find that "defendant *or* Arlandus Keyes" (emphasis added) committed the offense "after deliberation." Thus, the requisite mental state

was attributed neither to defendant alone nor to both Arlandus Keyes *and* defendant. Under those circumstances, Notes on Use 8(b) suggest that the additional paragraph be used, as it was in Paragraph Fourth of the verdict directing instruction.

In addition, the direction contained in the Notes on Use 8(b) to use the language set forth in the additional paragraph presupposes that the verdict directing instruction requires a finding, in a separate paragraph, that the act of killing the victim occurred "after deliberation" by another person who the defendant is accused of having aided or encouraged. *State v. Smith*, 934 S.W.2d 324, 328 (Mo.App. S.D.1996). Here, deliberation was attributed to Arlandus Keyes because Paragraph Third of the verdict director required the jury to find that "defendant or Arlandus Keyes" caused the death of Demetrius by shooting "after deliberation."

Contrary to defendant's assertion, the challenged instruction did require a finding that defendant deliberated. The verdict director properly instructed the jury on the elements required for the commission of the offense of murder in the first degree. The trial court did not err in submitting Instruction No. 7 to the jury. Defendant's second point is denied.

Defendant's third point charges error in the trial court's denial of his Rule 29.15 motion without an evidentiary hearing. None of the claims raised by defendant in his Rule 29.15 motion relate to his murder conviction. The judgment of the trial court denying defendant's Rule 29.15 motion is based on findings of fact that are not clearly erroneous; no error of law appears. An opinion would have no precedential value. Rule 84.16(b).

The allegations of error in defendant's direct appeal relate exclusively to his conviction of murder in the first degree, in that both points on appeal concern the requisite element of deliberation. At trial, defendant admitted to the other crimes of which he was convicted. Given the posture of this case, the sole issue before us is defendant's conviction of murder in the first degree and we only address the judgment as it relates to that conviction.

The judgment of conviction of murder in the first degree is reversed and the cause is remanded for a new trial. The judgment of the remaining convictions is affirmed. Because none of the claims relate to his murder conviction, the judgment of the trial court denying defendant's Rule 29.15 motion is affirmed.

AHRENS, P.J., and KAROHL, J., concur.