

# Missouri Court of Appeals
## Southern District

### In Division

| | |
|---|---|
| STATE OF MISSOURI, | |
| Plaintiff-Respondent, | |
| v. | No. SD38662 |
| MICHAEL LEE CREEKMORE, | Filed: October 7, 2025 |
| Defendant-Appellant. | |

### APPEAL FROM THE CIRCUIT COURT OF BARRY COUNTY

The Honorable David A. Cole, Judge

**AFFIRMED IN PART, REMANDED IN PART**

Michael Lee Creekmore ("Creekmore") appeals his convictions for murder in the first degree and armed criminal action following a jury trial in the Circuit Court of Barry County, Missouri ("the trial court").[1] His appeal consists of two allegations of error related to comments by the prosecutor in the State's closing argument, and a claim of error in the memorialization of the trial court's judgment at sentencing. Because

---

[1] *See* section 565.020, RSMo 2016, and section 571.015, RSMo Cum. Supp. 2020.

1

Creekmore's claimed errors with respect to the State's closing argument are not preserved and we decline to review them for plain error, Creekmore's convictions are affirmed. However, because the trial court's written judgment contains a clerical mistake in that the sentences set forth therein do not accurately reflect the trial court's oral pronouncement at sentencing, we remand to the trial court to correct this clerical mistake in the judgment by order *nunc pro tunc*.

**Factual History and Procedural Background**

Following a shooting incident which caused the death of Creekmore's father, R.C. ("Victim"), Creekmore was charged by Felony Information with the class A felony of murder in the first degree (Count I) and felony armed criminal action (Count II). The evidence adduced at trial showed the following:

On September 5, 2022, Creekmore was at Victim's house. After making and eating breakfast, Creekmore was sitting on the porch when Victim opened the door of the house and exchanged greetings with Creekmore, then disappeared downstairs. Victim came outside several minutes later and stated his intention to "work on the jumper cables and stuff to the car." Victim proceeded to return into the house to retrieve supplies from his bedroom while Creekmore made Victim breakfast. Victim came outside again and sat across from Creekmore on the porch and they began working on the jumper cables together. At some point in the process, Victim became agitated, began muttering over his shoulder, looked at Creekmore with what he interpreted to be an evil expression, and "went off." Victim got in Creekmore's face, Creekmore challenged him, and Victim "rammed [Creekmore's] face" with his face, yelled at two men across the street, and

began yelling and spitting at a passing car. Creekmore gathered his possessions and walked to his car with Victim following murmuring unintelligibly. Creekmore threw his cooking pans in the driver's side window and tried to throw his water bottle in the window but missed. Before he could grab the bottle from the ground, Victim cut him off and "rammed [Creekmore's] face again." Victim then shoved Creekmore's chest. Victim's dog then jumped the fence, which distracted Victim for a bit and allowed Creekmore to unhook everything hooked up to his car. As Creekmore was preparing his car to leave, Victim returned, kicked Creekmore in the leg, told him to get off his cables, and punched Creekmore in the face. When Creekmore opened his eyes, Victim was "coming at [him] to attack [him] again." When Victim continued his advance on Creekmore, Creekmore drew his firearm from his waistband, pointed it in the general direction of Victim, put his finger on the trigger, turned off the safety, and then pulled the trigger 19 times "until the fear was gone[,]" firing 19 shots at Victim and striking Victim 18 times. Creekmore then went to the front of his car, set his gun down on the car away from him, and pulled the extra magazine he had in his pocket out and set it on the front of the car. He called 911 and explained everything that happened.

Law enforcement then arrived at Victim's house and placed Creekmore under arrest. In the subsequent investigation, it was determined that Victim was shot ten times in the head or face, four times in the back, once in the left buttock, once in each thigh, and once in the left shoulder. The medical examiner who performed Victim's autopsy testified at trial that the paths for a number of the bullet wounds were consistent with Victim being shot while on the ground and/or facing away from Creekmore, but the order

of the shots could not be determined. The exact shot that killed Victim also could not be determined due to there being multiple wounds to similar regions of Victim's body which could have been fatal. Accordingly, Victim's cause of death was determined to be multiple gunshot wounds. Additionally, Ring camera footage from a nearby house capturing audio of some of the shots fired was admitted into evidence. A detective testifying on behalf of the State opined that, based on his experience, the Ring camera footage indicated the shots were "slow and deliberate."

At trial, Creekmore testified he had killed Victim out of fear for his life based on Victim's attacks on the day of the shooting and Victim's prior history of physical violence towards Creekmore in the past. He further testified he had acted instinctively on adrenaline and that Victim had "rolled into" his shots. Following the presentation of all evidence, the jury was instructed on Creekmore's claim of self-defense and defense counsel argued in closing that Creekmore had justifiably acted in self-defense under the law. In the State's subsequent closing rebuttal argument, the prosecutor made two comments directly relevant to Creekmore's current appeal.

The prosecutor first argued:

> First, let's talk about what happened when [Victim] was shot **because even though [the medical examiner] can't tell you the order there was an order and you can put the pieces together**.
> [Creekmore] has given you his version that is inconsistent with the evidence that it was adrenaline and happened rapidly and quickly. But you know that is not true because you heard some of those shots.
> He denied shooting [Victim] when he was on the ground. [Creekmore] said [Victim] rolled into the shots. That just doesn't make sense. And [Creekmore] denied shooting [Victim] in the back. Those are things that are directly disputed by the evidence.

4

So, if you are defending yourself and acting in lawful self-defense, why lie[?] Well, this is the case of the State versus Michael Creekmore. So, no one had more incentive to lie than him.

I submit to you that [Creekmore] pulled his gun out of his waistband in the front of [his] pants under his shirt. He turned off the safety, aims the gun at [Victim], put his finger on the trigger and pulls. When [Victim], as you heard, for that first shot was four to five feet away from him. **You saw that there was a shot in the shoulder. I submit to you that is shot number one.** And then what does [Victim] do? [Victim] turns and is trying to get away. [Victim] is shot in the back multiple times and you heard about some of the angles of those shots and how they are consistent with [Victim] falling over onto the ground. [Victim] turns over and you heard about the flamingo stance, right[?] So, [Victim] is turning and he is trying to get away and he gets shot in the leg. Maybe [Victim] continues turning and he falls down face up. We know [Victim] falls down face up. And then after [Victim] is on the ground [Creekmore] walks closer to him, stands over [Victim] and executes him and shoots [Victim] 10 times in the head.

Maybe [Victim's] head is bobbing around, but [Creekmore] gets [Victim] all over. You saw the six shots in the cheek, to the mouth, to the temple, the grazed wound when [Victim] was not a threat.

That is what happened on September 5th, 2022. That is not lawful self-defense.

(Emphasis added.) Then, towards the end of the State's argument, the prosecutor also argued:

> **For you to believe [Creekmore's] theory that you can violently shoot someone out of recognition for a punch in the face that that is reasonable, that is necessary force in self[-]defense it is open season in Barry County**. That is ridiculous. [Creekmore] was not justified in the first shot, he was not justified in the second shot, he was not justified in the third, fourth, fifth, sixth, seventh, eighth, ninth, tenth, eleventh, twelfth, thirteen, fourteen, fifteen, sixteen, seventeen or eighteen. That is not self-defense.

(Emphasis added.)

Following jury deliberations, Creekmore was found guilty of murder in the first degree and armed criminal action. The trial court sentenced Creekmore to life in prison without the possibility of parole for murder in the first degree, and to three years in the

custody of the Missouri Department of Corrections for felony armed criminal action, with the sentences to run consecutively with each other. This timely appeal follows the trial court's entry of written judgment and denial of Creekmore's motion for acquittal or new trial.

**Standard of Review**

Creekmore concedes he did not properly preserve any of the claims of error he now advances on appeal and requests we review his claims for plain error. "The plain error rule is to be used sparingly and may not be used to justify a review of every point that has not been otherwise preserved for appellate review." *State v. Brandolese*, 601 S.W.3d 519, 526 (Mo. banc 2020) (quoting *State v. Jones*, 427 S.W.3d 191, 195 (Mo. banc 2014)). "Plain error review is discretionary, and this Court will not review a claim for plain error unless the claimed error facially establishes substantial grounds for believing that manifest injustice or miscarriage of justice has resulted." *State v. Yount*, 710 S.W.3d 49, 64-65 (Mo. App. S.D. 2025) (quoting *State v. Phillips*, 687 S.W.3d 642, 647 (Mo. banc 2024)). "The party seeking plain error review bears the burden of proving plain error occurred and that it resulted in manifest injustice or miscarriage of justice." *Id.* at 65. A plain error is one which is "evident, obvious, and clear." *State v. Baumruk*, 280 S.W.3d 600, 607 (Mo. banc 2009) (internal quotations and citation omitted). To demonstrate manifest injustice or miscarriage of justice in the context of plain error review, "the appellant must show the error was outcome determinative." *State v. Wood*, 580 S.W.3d 566, 579 (Mo. banc 2019) (internal quotations and citation omitted).

**Analysis**

*Point I*

Creekmore's first point on appeal contends that:

> The trial court abused its discretion in overruling [Creekmore's] objection and permitting [the State] to argue the shot to [Victim's] shoulder "[was] shot number one" because this violated [Creekmore's] right to due process of law and to a fair trial under the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 and 18(a) of the Missouri Constitution in that any argument about which of 19 shots, and 18 wounds, to [Victim] was inflicted first was predicated on facts not in evidence and wildly speculative. Where [Creekmore's] self-defense theory claimed [Victim] was the initial aggressor and that [Creekmore] fired rapidly and without looking, permitting [the State] to claim the fact the shot to [Victim's] shoulder was first and, thus, aimed, in contravention of [Creekmore's] testimony, without any evidentiary basis was reasonably likely to affect the outcome of trial.

We disagree.[2] The substance of both parties' briefings and our own review of the record confirms that Creekmore lodged no objection at trial to the comment he now seeks to challenge on appeal. Consequently, Point I may only be reviewed for plain error. *See State v. Thompson*, 390 S.W.3d 171, 174 (Mo. App. E.D. 2012) ("The standard of review for an alleged error in closing argument depends upon whether defense counsel objects. *State v. Shurn*, 866 S.W.2d 447, 460 (Mo. banc 1993). Where defense counsel does not object, as is the case here, we may review only for plain error. *Id.*"). We decline to do so. Creekmore has not facially established "substantial grounds for believing that

---

[2] Point I misstates the particular trial court action Creekmore seeks to challenge on appeal – the Point Relied On asserts "[t]he trial court abused its discretion in overruling [Creekmore's] objection" to certain comments by the State (in closing argument) but the corresponding argument section expressly concedes there was no objection to the challenged comments at trial and requests plain error review.

7

manifest injustice or miscarriage of justice" has occurred in this matter. ***Yount***, 710

S.W.3d at 64-65.

Broadly, the trial court is "not expected to assist counsel in trying cases[.]"

***Thompson***, 390 S.W.3d at 176.

> Uninvited interference by the trial court in trial proceedings is generally
> discouraged because it risks injecting the court into the role of a participant
> and invites error. The trial court should take independent action only in the
> most unusual or exceptional circumstances. Thus, an appellate court will
> rarely find plain error where a trial court has failed to act *sua sponte* with
> regard to the proceedings.

***State v. Reeves***, 708 S.W.3d 168, 172 (Mo. App. S.D. 2024), *reh'g and/or transfer denied*

(Jan. 7, 2025), *transfer denied* (Apr. 1, 2025) (quoting ***State v. Paine***, 631 S.W.3d 691,

694 (Mo. App. W.D. 2021)).

This precept holds particularly true in the context of closing arguments where,

"[i]n the absence of an objection and request for relief, a trial court's uninvited

interference with summation may itself constitute error." ***State v. Lloyd***, 205 S.W.3d 893,

908 (Mo. App. S.D. 2006); *see also* ***State v. Mayes***, 63 S.W.3d 615, 632 (Mo. banc 2001)

(determining "the trial court's options are narrowed to uninvited interference with

summation and a corresponding increase of error by such intervention" in the absence of

objection and request for relief) (internal quotations and citation omitted). A "defendant's

failure to object to an improper argument is often strategic, and uninvited intervention

may emphasize the matter in a way the defendant chose not to." ***State v. Carter***, 415

S.W.3d 685, 691 (Mo. banc 2013). Thus, "[b]ecause trial strategy looms as an important

consideration in any trial, assertions of plain error concerning matters contained in

8

closing argument are generally denied without explication." ***Thompson***, 390 S.W.3d at176. Indeed, "[t]his Court rarely finds plain error in closing argument, and reversal is warranted only if the defendant shows the improper argument "had a decisive effect on the jury's determination."[3] ***Wood***, 580 S.W.3d at 579 (quoting ***State v. McFadden***, 369 S.W.3d 727, 747 (Mo. banc 2012)); *see also* ***State v. Kempker***, 824 S.W.2d 909, 911 (Mo. banc 1992) ("[P]lain error will seldom be found in unobjected closing argument.").

Here, Creekmore's briefing does not identify any circumstances so "unusual" or "exceptional" that the trial court's unprompted interference in the State's closing argument was necessitated. "[C]ounsel is traditionally given wide latitude to suggest inferences from the evidence on closing argument." ***State v. Gaines***, 316 S.W.3d 440, 456 (Mo. App. W.D. 2010) (internal quotations and citations omitted). This is so even where such inferences may be "illogical or erroneous." *Id.* (internal quotations and citations omitted). A prosecutor may "argue the evidence, the reasonable inferences from that evidence, and the credibility of the witnesses." ***Glass v. State***, 227 S.W.3d 463, 474 (Mo. banc 2007). This encompasses "inferences fairly drawn from the evidence, even if the inferences are not necessarily warranted." ***State v. Roberts***, 838 S.W.2d 126, 130 (Mo. App. E.D. 1992) (citing ***Grubbs v. State***, 760 S.W.2d 115, 119 (Mo. banc 1988), *cert. denied,* 490 U.S. 1085, 109 S.Ct. 2111, 104 L.Ed.2d 672 (1989)); *see also* ***Clemmons v. State***, 785 S.W.2d 524, 530 (Mo. banc 1990) ("[A] prosecutor may state a conclusion if that conclusion is fairly drawn from the evidence[.]")).

---

[3] The appellant bears the burden of proving the "decisive effect." ***State v. Parker***, 856 S.W.2d 331, 333 (Mo. banc 1993).

In the face of the foregoing guidance, Creekmore directs us to nothing which indicates we should take the extraordinary measure of convicting the trial court of reversible plain error for refraining from intervening in the State's closing rebuttal argument *sua sponte*. Point I's argument broadly relies upon general statements of law to the effect that assertions or insinuations of fact outside the record in closing argument are "improper" and "highly prejudicial." **State v. Nelson**, 957 S.W.2d 327, 329 (Mo. App. E.D. 1997). Noticeably absent, however, is any developing analysis connecting the cited law to the specific facts of this case and showing that the challenged closing argument comment was improper, much less so egregious that the trial court committed *plain error* by not intervening of its own accord.[4] *See generally* **Aydin v. Boles**, 658 S.W.3d 223, 227 (Mo. App. W.D. 2022). Indeed, in none of Creekmore's cited primary authorities did the appellate court find reversible plain error in closing arguments, further emphasizing that such error is exceedingly rare. *See* **State v. Deck**, 303 S.W.3d 527, 540-44 (Mo. banc 2010) (determining no plain error in the State's closing argument); **State v. Storey**, 901 S.W.2d 886, 897-98 (Mo. banc 1995) (determining no plain error in the State's closing argument); **Nelson**, 957 S.W.2d at 329 (defense counsel objected to the disputed closing comments at trial so plain error review was not at issue); **State v. Rush**, 949 S.W.2d 251, 256 (Mo. App. S.D. 1997) (trial court did not abuse its discretion in granting the State's motion to limit the scope of defendant's closing statements in limine). Thus, in the

---

[4] Even taking Creekmore's argument on its face, not all "prejudicial" error is also plain error. **Baumruk**, 280 S.W.3d at 607; *see also* **State v. Varvera**, 897 S.W.2d 198, 201 (Mo. App. S.D. 1995) ("*Plain error* and *prejudicial error* are not synonymous terms.").

absence of any plain error analysis or attempt to facially establish substantial grounds for manifest injustice or miscarriage of justice by Creekmore, we decline to exercise our discretion to apply plain error review in this case.[5]

Even if we were to review for plain error or otherwise reach the merits, Point I would still fail because – assuming *arguendo* that the State asking the jury to infer that Victim was shot first in the shoulder was in fact objectionable or otherwise improper – Creekmore has not at all demonstrated the complained-of comment had any "decisive effect" on the jury's verdict. Creekmore's theory of self-defense at trial was essentially that he only drew his firearm and rapidly fired it at Victim under the influence of adrenaline to defend himself from Victim's physical assault. However, other than a bare, conclusory assertion, Creekmore offers no explanation as to why Victim supposedly being shot first in the shoulder was inconsistent or otherwise detrimental to the proposition that Creekmore fired at Victim in self-defense. Nor are we persuaded that the State's theory of the case turned on whether Victim was first shot in the shoulder.[6]

---

[5] Regarding Creekmore's allegations of constitutional violations, Point I's corresponding argument section is entirely devoid of even nominal argument referencing, much less developing, this assignment of error. "Arguments raised in the points relied on which are not supported by argument in the argument portion of the brief are deemed abandoned and present nothing for appellate review." **Luft v. Schoenhoff**, 935 S.W.2d 685, 687 (Mo. App. E.D. 1996). "It is not the function of the appellate court to serve as advocate for any party to an appeal." **Thummel v. King**, 570 S.W.2d 679, 686 (Mo. banc 1978). "We cannot become advocates for an appellant by speculating about facts and arguments that have not been made." **Pearson v. Keystone Temp. Assignment Group, Inc.**, 588 S.W.3d 546, 552 (Mo. App. E.D. 2019).

[6] We note that neither the felony information nor the submitted verdict directors for first-degree murder and armed criminal action in this case limited the alleged criminal acts by Creekmore to his first shot at Victim or his shot at Victim's shoulder.

Creekmore asserts the State could not have "logically" made its case to the jury without the shoulder shot inference, but fails to provide any analysis explaining how the absence of this inference would have supposedly undermined the State's proof for any of the necessary elements of first-degree murder or armed criminal action. Moreover, that the comment regarding the shoulder shot only briefly arose in the course of the State's closing rebuttal argument further lends credence to the notion that the proposition was relatively insignificant to the State's case as a whole.

Additionally, we note that the jury in this case was directed as follows at trial under Instruction No. 17:

> The attorneys will now have the opportunity of arguing the case to you. Their arguments are intended to help you in understanding the evidence and applying the law, **but they are not evidence**.
> You will bear in mind that **it is your duty to be governed in your deliberations by the evidence as you remember it, the reasonable inferences which you believe should be drawn therefrom, and the law as given in these instructions**.
> It is your duty, and yours alone, to render such verdict under the law and the evidence **as in your reason** and conscience is true and just.
> The [S]tate's attorney must open the argument. The defendant's attorney may then argue the case. The [S]tate's attorney may then reply. No further argument is permitted by either side.

(Emphasis added.) The jury is presumed to have properly followed this instruction. *See State v. Minor*, 648 S.W.3d 721, 731 (Mo. banc 2022) ("A jury is presumed to follow the circuit court's instructions.").

12

Taking the above into account within the context of the whole trial[7] – a trial in which 14 witnesses testified, well over 200 exhibits were admitted into evidence, and which yielded a 612-page transcript – Creekmore has failed to uphold his burden to make a *prima facie* showing that the brief, isolated comments in the State's closing rebuttal argument had a decisive effect on the jury's verdict. *See* **State v. Smith**, 32 S.W.3d 532, 552 (Mo. banc 2000) (determining that, when "[t]aking the [State's] entire closing argument into consideration," the prosecutor's "isolated and brief" comment to the jury that anything less than a first-degree murder conviction would be an "insult" to the defendant's victims was not plain error requiring *sua sponte* intervention by the trial court); **State v. Hough**, 675 S.W.3d 214, 218 (Mo. App. S.D. 2023) (declining to apply plain error review where the appellant failed to provide argument as to how or why a "brief, isolated" comment by the State during closing argument regarding appellant's failure to provide an exculpatory statement to police facially established substantial grounds for manifest injustice). Point I is denied.

*Point II*

In his second point on appeal, Creekmore contends "[t]he trial court plainly erred in failing to *sua sponte* intervene and issue a curative instruction" after the State asserted in closing argument that "it [would be] open season in Barry County" if the jury accepted Creekmore's self-defense claim because this comment "improperly personalized [the State's] argument by placing the life and safety of the jury and residents of Barry County

---

[7] When construing a closing argument, we consider the "entire record" and not an "isolated segment." **Wood**, 580 S.W.3d at 579.

13

at issue." Creekmore concedes he failed to object to the challenged closing comment by the State, and thereby failed to properly preserve this alleged error for appellate review. He again requests plain error review. We again decline to apply plain error review.[8] As set forth in our discussion of Point I, such review is "discretionary" and to be used "sparingly." It is rare that we will find plain error in the trial court refraining from interfering in trial proceedings uninvited, and rarer still that we will find plain error in the absence of such unprompted interventions by the trial court in closing argument.

Here, Creekmore openly concedes that this Court recently found no plain error when addressing a defendant's challenge to very similar closing comments by the State in *State v. Reeves*, 708 S.W.3d at 173. The case involved a road rage incident where defendant was also charged with first-degree murder and armed criminal action and claimed self-defense at trial. *Id.* at 171. Following a guilty verdict by the jury, defendant appealed, alleging, *inter alia*, that the trial court had plainly erred in failing to take corrective action *sua sponte* following comments by the State in closing rebuttal argument to the effect that accepting defendant's self-defense claim would amount to an "open season" license to kill in the county. *Id.* at 173. Much like Creekmore, the defendant in *Reeves* argued that these "open season" comments improperly personalized the case to the jury. *Id.* We rejected this contention, specifically holding that the State's

---

[8] Point II also alleges violations of Creekmore's constitutional rights. However, Creekmore once again completely fails to develop his constitutional allegations in the corresponding argument section of his brief, preserving nothing for appellate review. This portion of his unpreserved claims on appeal is therefore deemed abandoned. *Luft*, 935 S.W.2d at 687.

"open season" comments did not suggest personalized danger to the jury or their families, and fell "within the [S]tate's considerable latitude to argue the duty of the jury to convict the defendant and prevent crime, and the results to society of a failure to uphold the law." *Id.* Creekmore makes no attempt to distinguish the closing comments addressed by *Reeves* from those disputed in the present matter. He instead cites to and discusses a series of other cases where the court of review determined the trial court erred in permitting various forms of improper argument by the State in closing argument. The State argues, and we agree, that these authorities are all clearly distinguishable from the record here and/or are not binding upon this Court. *See State v. Tiedt*, 206 S.W.2d 524, 526-28 (Mo. banc 1947);[9] *State v. Banks*, 215 S.W.3d 118, 120-21 (Mo. banc 2007);[10] *State v. Walter*, 479 S.W.3d 118, 124-25 (Mo. banc 2016);[11] *State v. Northcutt*, 641 S.E.2d 873, 881-82 (S.C. 2007).[12] We see no reason to deviate from our sound holding in *Reeves* here. Point II is denied.

---

[9] The prosecutor argued at length, over multiple objections made by defense counsel, that the defendant had the intent to commit further murder which placed the innocent citizens and people of the community, including "[e]veryone in [the] court room," in danger of being "struck down by a murderer, their blood spurting from their bodies into the gutter."

[10] The prosecutor directly labelled the defendant as the "Devil" over defense counsel's objection.

[11] The State utilized impermissibly altered evidence as a visual aid in closing argument in the form of a photograph of defendant in prison attire with the word "GUILTY" superimposed in large, red text over defendant's face.

[12] An opinion rendered by the Supreme Court of South Carolina where it addressed a prosecutor's closing argument during the sentencing phase that failure of the jury to impose the death penalty on defendant would result in an "open season on babies" in the county.

*Point III*

Creekmore's final point on appeal contends that the trial court plainly erred "in executing its written judgment" regarding the sentence imposed on Creekmore's armed criminal action conviction in that the "999 Years" imprisonment sentence set forth in the written judgment materially differed from the trial court's oral pronouncement of three years' imprisonment at sentencing. In other words, Creekmore asserts the trial court failed to accurately memorialize its orally pronounced sentence for Creekmore's conviction in its written judgment. The State agrees.[13] Creekmore concedes his trial counsel did not object to this alleged error at sentencing nor otherwise challenge the trial court's execution of the written judgment, and therefore requests we review for plain error on appeal.

"[T]he written sentence and judgment of the trial court should reflect its oral pronouncement of sentence before the defendant." *State ex rel. Zinna v. Steele*, 301 S.W.3d 510, 514 (Mo. banc 2010), *overruled on other grounds by* **Branson v. Shewmaker**, 710 S.W.3d 531, 537 (Mo. banc 2025). Where there is a "material difference" between the sentence orally pronounced and the corresponding written judgment, "the oral pronouncement controls." *State ex rel. LaChance v. Bowersox*, 119 S.W.3d 95, 95 (Mo. banc 2003). "The failure to accurately memorialize the decision of the trial court as it was announced in open court is a clerical mistake." *State v. Robinson*,

---

[13] Creekmore and the State both further note that "999 Years" imprisonment is, in any event, not an authorized sentence for a first-time offense of armed criminal action under section 571.015.1.

16

685 S.W.3d 32, 34 (Mo. App. W.D. 2024). Such "[c]lerical errors in the sentence and judgment in a criminal case may be corrected by order *nunc pro tunc* if the written judgment does not reflect what was actually done." **State v. Knox**, 604 S.W.3d 316, 325 (Mo. banc 2020) (internal quotations and citation omitted); *see also* Rule 29.12(c), Missouri Court Rules (2025) ("Clerical mistakes in judgments … arising from oversight or omission may be corrected by the court at any time after such notice, if any, as the court orders.").

> Here, the trial court orally pronounced its sentence in open court as follows:

> No legal cause or reason having been shown why sentence and judgment of the Court should not be pronounced, it is the Sentence and Judgment of this Court as to Count I [(murder in the first degree)] that [Creekmore] be Sentenced to life in prison without the possibility of parole, and on Count II [armed criminal action)] that [Creekmore] be Sentenced to three years in the custody of the Missouri Department of Corrections, said Sentences to run consecutively with each other.

In contrast to the oral pronouncement, while the trial court sentenced Creekmore to life imprisonment without the possibility of parole for his murder conviction, the trial court's court written judgment reflects two separate sentences for Creekmore's armed criminal action conviction, one for "3 Years" and the other for "999 Years." Accordingly, because the written judgment does not reflect what the trial court actually pronounced at sentencing, it contains a clerical error that the trial court may correct *nunc pro tunc*. Point III is granted in part.[14]

---

[14] Creekmore additionally asserts violations of his constitutional rights under Point III but yet again fails to present any supporting analysis in his corresponding argument. These unpreserved claims of error are therefore abandoned. **Luft**, 935 S.W.2d at 687.

17

**Conclusion**

The case is remanded for the sole purpose of entering a *nunc pro tunc* order that conforms the written judgment to the trial court's oral pronouncement at sentencing.[15] The judgment is affirmed in all other respects.

JENNIFER R. GROWCOCK, C.J. – OPINION AUTHOR

JEFFREY W. BATES, J. – CONCURS

BECKY J. WEST, J. – CONCURS

---

[15] The State urges this Court to enter its own *nunc pro tunc* order correcting the judgment without remanding to the trial court, citing to **State v. Denham**, 686 S.W.3d 357, 369 (Mo. App. W.D. 2024). We can find no such holding in the opinion. Indeed, the **Denham** court remanded the case to the trial court to, *inter alia*, conform the disputed written judgment to the trial court's oral pronouncement of sentences *nunc pro tunc*. **Id.** at 369-71. This ruling was consistent with the nature of a *nunc pro tunc* order as merely an exercise of the "judicial power to ensure the accuracy of [a court's] own records" and not a new "judicial declaration of the parties' rights." *See generally* **McGuire v. Kenoma, LLC**, 447 S.W.3d 659, 663-64 (Mo. banc 2014).